IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YELENA BIRD, ROBERT BUCKINGHAM,
FREEDOM CHETENI, JOHN MORAROS
and  SATYA RAO,

          Plaintiffs,

vs.                                                          No. CIV 08-851 BB/LAM

REGENTS OF NEW MEXICO STATE UNIVERSITY,
LARRY OLSEN, in his individual capacity,
JAMES ROBINSON, in his individual capacity,
MICHAEL MARTIN, in his individual capacity, and
ROBERT GALLAGHER, in his individual capacity,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on Defendant New Mexico State University's Motion for Summary Judgment on All Claims Associated with Plaintiff Cheteni's Motion for Emergency Injunctive Relief filed in this Litigation (Doc. No. 215, filed May 21, 2010).  For the reasons stated below, the Court will **DENY** the Motion.

**Background**

      Plaintiff Cheteni is an African from the nation of Zimbabwe and was a graduate student at NMSU.  (*See* Third Amended Complaint ¶ 3 at 2, Doc. No. 171, filed March 5, 2010).  In 2006, Cheteni filed an asylum petition with the U.S. Department of Homeland Security and received a receipt for his asylum petition, a copy of which he provided to NMSU.  (*See id.* ¶ 89 at 21).  "On the strength of this receipt, NMSU accorded Cheteni official in-state residence status for tuition purposes in the fall of 2006."  (*Id.*).  In August 2008, NMSU claimed that Cheteni's proof of the pendency of his asylum petition was insufficient, requested a copy of his actual asylum petition and threatened

to revoke Cheteni's entitlement to in-state tuition based on his asylum petition. (*See id.* ¶ 112 at 26). Cheteni received a grade of "F" in two classes during the Fall 2008. (*See id.* ¶ 114 at 27). In January 2009, NMSU refused to permit Cheteni to register for Spring 2009 classes as an in-state student and required him to pay the balance due for the Fall 2008 semester out-of-state tuition. (*See id.* ¶ 115 at 27).

On February 5, 2009, Plaintiff Cheteni filed a motion for emergency injunctive relief (Doc. No. 25) asking the Court to enjoin Defendants from excluding Cheteni from registering as a student subject to in-state tuition and from releasing or using Cheteni's grades from the Fall 2008 semester. Judge Lourdes A. Martinez held a status conference on Cheteni's motion for emergency injunctive relief on February 24, 2009 (*See* Clerk's Minutes, Doc. No. 50, filed February 25, 2009) during which "the parties reached the following agreement:"

> (1) If Plaintiff Cheteni is able to obtain evidence by August 2009, that shows he had an asylum petition pending in July 2008, Defendants will remove the out-of-state tuition charges for the Fall 2008 semester, from Mr. Cheteni's account at NMSU, and will allow him to pay in-state tuition for the Fall 2009 semester, as long as Plaintiff Cheteni pays any outstanding incidental charges from the Fall 2008 semester owed to NMSU; or
>
> (2) If Plaintiff Cheteni reapplies for asylum before the Fall 2009 semester, and he pays the amount he owes for out-of-state tuition for the Fall 2008 semester, as well as all outstanding incidental charges owed to NMSU, Bruce Kite, in-house NMSU counsel, will strongly recommend that Plaintiff Cheteni be allowed to pay in-state tuition for the Fall 2009 semester.

(Proposed Findings and Recommended Disposition, Doc. No. 51, filed February 25, 2009). Based on the agreement reached by the parties, Judge Martinez recommended that Plaintiff Cheteni's motion for emergency injunctive relief be denied. (*See id.*).

**Cheteni's In-State Tuition Claim**

Defendant NMSU contends that Plaintiff Cheteni's claim of entitlement to in-state tuition "fails to state a claim of constitutional proportion" because Cheteni "cannot show a property right with regard to in-state tuition." (Motion at 3-4). Plaintiff Cheteni states that he has not claimed a property right to in-state tuition but instead claimed that "NMSU retaliated against him by denying him a benefit (in-state tuition), which had previously been granted to him, following his complaints of race discrimination and retaliation in violation of the First Amendment, Title VI, 42 U.S.C. § 1981 and 42 U.S.C. § 1983." (Response at 6, Doc. No. 237, filed June 11, 2010). Cheteni contends (*See* Response at 6, n.2), and NMSU does not dispute (*See* Reply, Doc. No. 265, filed June 28, 2010), that there is no requirement for a party making a claim of retaliation pursuant to the First Amendment, Title VI, 42 U.S.C. § 1981 and 42 U.S.C. § 1983 to demonstrate the existence of a property right. *See Carney v. City and County of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008 ) ("To state a prima facie case of retaliation, [plaintiff] must show that: (1) she engaged in a protected activity; (2) [defendant] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action."). The Court will deny that portion of NMSU's Motion seeking summary judgment on Plaintiff Cheteni's claim of entitlement to in-state tuition as moot because Plaintiff Cheteni states he is not making such a claim.

**Accord and Satisfaction**

NMSU argues that accord and satisfaction bars any claim arising out of the increase in tuition for Plaintiff Cheteni. (Motion at 4). NMSU characterizes the agreement between the parties at the status conference before Judge Martinez as a settlement agreement and suggests that the parties

intended complete accord and satisfaction of their claims because Plaintiff Cheteni did not expressly reserve his right to assert other claims.  *See* Motion ¶ 7 at 2, 4; Response at 4-6; *Vidal v. American General Companies*, 109 N.M. 230, 234 (1990) ("a release given by one party pursuant to a settlement with a second party constitutes an accord and satisfaction of all claims between the two parties arising out of the incident giving rise to the liability, absent an express reservation of rights by the settling party").

A settlement agreement is a form of contract which must be factually supported by an offer, an acceptance, consideration, and mutual assent to be legally valid and enforceable.  *See Lovelace Respiratory Research Institute v. The Funding Connection, Inc.,* 2010 WL 4924960 *3 (N.M. App.). Neither the existence of an "agreement" nor a party's characterization of the relationship between the parties definitively establishes the existence of a contractual relationship.  *See Talbott v. Roswell Hosp. Corp.,* 138 N.M. 189, 193 (N.M. App. 2005).  Because no single factor is decisive, courts must consider the attributes of contractual relationships, in light of the dealings between the parties as a whole, to determine whether a contract existed.  *See id.*; Naranjo v. Paull, 111 N.M. 165, 169 (Ct. App. 1990) ("under the doctrine of accord and satisfaction one who accepts a payment is not foreclosed from pursuing a claim against the payor unless the payor made clear the payment's purpose as a settlement offer").

Judge Martinez' Proposed Findings and Recommended Disposition (Doc. No. 51, filed February 25, 2009) shows that the parties reached an agreement on Cheteni's tuition charges to resolve his motion for emergency injunctive relief.  However, NMSU does not set forth any facts to support its characterization of the agreement as a settlement of all of Cheteni's claims.  The Court will deny that portion of NMSU's Motion that seeks judgment on Cheteni's claims on the ground

4

that accord and satisfaction bar those claims.  *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir.2002) ("Before the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its initial responsibility of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law.").

**IT IS SO ORDERED.**

_____
**BRUCE D. BLACK**
**CHIEF UNITED STATES DISTRICT JUDGE**