IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YELENA BIRD, ROBERT BUCKINGHAM,
FREEDOM CHETENI, JOHN MORAROS
and  SATYA RAO,

                Plaintiffs,

vs.                                                      No. CIV 08-851 BB/LAM

REGENTS OF NEW MEXICO STATE UNIVERSITY,
LARRY OLSEN, in his individual capacity,
JAMES ROBINSON, in his individual capacity,
MICHAEL MARTIN, in his individual capacity, and
ROBERT GALLAGHER, in his individual capacity,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on Defendant Larry Olsen's Motion for Partial Summary Judgment on Plaintiff Freedom Cheteni's Claims Pursuant to 42 U.S.C. §§ 1981 and 1983 (Doc. No. 253, filed June 14, 2010).  For the reasons stated below, the Motion will be **GRANTED in part** and **DENIED in part.**

**Sexual Harassment/Discrimination Claims**

      Defendant Olsen characterizes Plaintiff Cheteni's claims against Olsen as being centered on Olsen's alleged inappropriate use of the NMSU email server to send pornographic or sexually explicit material to another Plaintiff's email account, that Cheteni claims he was required to open those emails and viewing those emails offended and upset Cheteni.  (*See* Motion at 2).  Olsen argues that 42 U.S.C. § 1981 applies only to racial discrimination and does not apply to gender or sex

discrimination. (*See id.* at 6). Olsen seeks summary judgment on Cheteni's claims regarding sexual harassment, sex discrimination or otherwise related to the "pornographic" emails. (*See id.*).

Cheteni states that he has not asserted a claim for gender discrimination or sexual harassment against Olsen in this case. (*See* Response at 13, Doc. No. 283, filed July 15, 2010). The Court will deny as moot that portion of Olsen's Motion that seeks summary judgment on Cheteni's sexual harassment and sexual discrimination claims.

**Racial Discrimination/Hostile Work Environment Claims**

Olsen seeks summary judgment on Cheteni's racial discrimination and hostile work environment claims. (*See* Motion at 3-5). "To make out a prima facie case of [racial] discrimination, [plaintiff] must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees." *Carney v. City and County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008). "To survive summary judgment on a claim alleging a racially hostile work environment, [plaintiff] must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that the victim was targeted for harassment because of [his] ... race[ ] or national origin." *Herrera v. Lufkin Industries, Inc.* 474 F.3d 675, 680 (10th Cir. 2007) ("the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact."); *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir.2005) ("Severity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.").

Defendant Olsen, as the moving party, "carries the burden of showing beyond a reasonable doubt that [he] is entitled to summary judgment." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). "The moving party may carry [his] initial burden either by producing affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the non-moving party does not have enough evidence to carry its burden of persuasion at trial." *Id.*

Olsen sets forth only ten material facts that he contends are undisputed. (*See* Motion at 3-5). The first two facts indicate Cheteni was a graduate student and was awarded a teaching assistantship. (*See id.* at 3). The third fact states that Cheteni alleges he was exposed to sexually explicit emails sent by Olsen to Plaintiff Moraros. (*See id.*). The fourth fact refers to an alleged discussion between Olsen and Cheteni regarding Cheteni's duties as a teaching assistant. (*See id.*). Facts 5 and 6 indicate Cheteni alleges he overheard Olsen make comments to others regarding their skin color and that Cheteni viewed some emails containing racial jokes. (*See id.* at 4). Fact 7 states that Cheteni filed a complaint with the Office of Institutional Equity at NMSU against Olsen. (*See id.*). Fact 8 states "Cheteni testified that Olsen never made a racial comment to Cheteni." (*Id.*). Fact 9 states that Olsen was removed from his administrative duties as of April 21, 2008, and his employment at NMSU was terminated as of May 2008. (*See id.*).

Olsen fails to meet his initial burden of showing that he is entitled to summary judgment. Olsen sets forth only four facts regarding allegedly discriminatory conduct (Facts 3, 5 and 6[1]) and essentially no facts regarding the context or environment in which the discriminatory conduct is

---

[1]Two of Olsen's Undisputed Material Facts are labeled "6." (*See* Motion at 4).

alleged to have occurred. *See McCowan v. All Star Maintenance, Inc.*, 273 F.3d 917, 925 (10th Cir. 2001) ("allegedly discriminatory incidents should not be examined in isolation. . . because conduct which is not [race]-based may form a part of the context or environment in which the discriminatory conduct is alleged to have occurred, such conduct may be relevant to, and should be considered in, evaluating a hostile work environment claim"). Olsen's Fact 8 states "Cheteni testified that Olsen never made a racial comment to Cheteni," however, discriminatory conduct is not limited to racial comments. *See id.* The Court will deny that portion of Olsen's Motion which seeks summary judgment on Cheteni's racial discrimination and hostile work environment claims.

**Retaliation**

Defendant Olsen seeks summary judgment on Plaintiff Cheteni's retaliation claim pursuant to 42 U.S.C. § 1981. In analyzing a Section 1981 retaliation claim, the Court applies the three-part test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) which requires the plaintiff to first establish a prima facie case of retaliation. *See Somoza v. University of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008). If the plaintiff succeeds in establishing a prima facie case, the employer must provide a legitimate and facially non-retaliatory reason for its action. (*See id.*). Finally, if the employer satisfies this burden, the plaintiff must establish that the defendant's reasons were pretextual. (*See id.*). "In order to establish a prima facie case of retaliation, [Plaintiff] must show (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *See id.* at 1212.

Plaintiff Cheteni attributes the following retaliatory acts to Olsen: Cheteni (1) was accused of making a gun threat (February 22, 2008); (2) received an anonymous, threatening, racist note

warning him to "go back to Africa" (April 14, 2008); (3) had his in-state tuition status revoked (summer of 2008); (4) lost his graduate assistantship (summer of 2008); (5) was charged with disturbing the peace by a Department administrator (September 2008); (6) was accused of academic misconduct in three separate courses (end of fall 2008 semester); (7) was prohibited from enrolling at NMSU for the spring 2009 semester (January 2009); and (8) was terminated in the international student database resulting in his arrest and subsequent five-month incarceration (after March 19, 2009). (*See* Response at 17; Cheteni's Additional Material Facts ¶¶ 23-28, 31, 35, 36, 38, and 40-44 at 8-13).

Olsen states, and Plaintiff Cheteni does not dispute, that "Olsen was removed from his administrative duties as of April 21, 2008, and his employment at NMSU was terminated as of May 2008." (Motion ¶ 9 at 4). Olsen argues that the "retaliatory acts alleged by Cheteni all occurred after May 2008, after Olsen's termination, and therefore could not have been participated in by Olsen." (Motion at 9). Two of the retaliatory acts that Cheteni attributes to Olsen, the gun threat accusation and the racist note, happened prior to Olsen's termination. (*See* Response ¶ 23 at 8, ¶ 31 at 10). Defendant Martin indicated in his deposition that a female staff person accused Cheteni of making a gun threat. (*See* Deposition of Michael Martin at 128:10-129:25, Response Exhibit 17, Doc. No. 283-4). Cheteni states that the racist note was anonymous. (*See* Response ¶ 31 at 10).

Cheteni contends that Olsen's termination does not relieve Olsen of liability for the subsequent retaliatory acts citing *Buck v. City of Albuquerque. See* 549 F.3d 1269, 1279-80 (10th Cir. 2008) ("requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have know would cause other to deprive plaintiff of her constitutional rights"). Cheteni argues that "given his influential position as a senior

5

administrator, Olsen was in a position to influence others to bring about his desired outcome." (Response at 20; *citing* Additional Material Facts which indicate Olsen was a friend of NMSU's Head of the Department of Health Science, Defendant Robinson, and that Olsen stated Robinson had his "list of undesirables" and was going "to clean house"). Cheteni concludes that a "reasonable factfinder could determine that Olsen was involved in setting in motion the significant pattern of retaliation against Cheteni that continued even after [Olsen] was terminated." (*Id.*).

Cheteni does not set forth any additional material facts showing that Olsen set in motion the alleged retaliatory acts. *See Mink v. Knox*, 613 F.3d 995, 1001 (10th Cir. 2010) (plaintiff may demonstrate causation by showing an affirmative link between the constitutional deprivation and the defendant's exercise of control or direction). Not one of Cheteni's 44 Additional Material Facts alleges that Olsen had any role whatsoever in the alleged retaliatory acts against Cheteni. "In a response to a motion for summary judgment, a party cannot rest on ignorance of [the] facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 Fed.Appx. 887, 891 (10th Cir. 2010) (*quoting Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)); *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir.2003) ("Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment."). The Court will grant that portion of Olsen's Motion that seeks summary judgment on Cheteni's retaliation claim against Olsen.

**IT IS SO ORDERED.**

_____
**BRUCE D. BLACK**
**CHIEF UNITED STATES DISTRICT JUDGE**