IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YELENA BIRD, ROBERT BUCKINGHAM,
FREEDOM CHETENI, JOHN MORAROS
and SATYA RAO,

               Plaintiffs,

vs.                                                                                    No. CIV 08-851 BB/LAM

REGENTS OF NEW MEXICO STATE UNIVERSITY,
LARRY OLSEN, in his individual capacity,
JAMES ROBINSON, in his individual capacity,
MICHAEL MARTIN, in his individual capacity, and
ROBERT GALLAGHER, in his individual capacity,

               Defendants.

## MEMORANDUM OPINION AND ORDER DENYING PARTIAL SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on Defendant Larry Olsen's Motion for Partial Summary Judgment on Plaintiffs Bird and Moraros' Claims Regarding Non-Renewal of Employment Contracts (Doc. No. 251, filed June 14, 2010). For the reasons stated below, the Court will **DENY** the Motion.

**Non-Renewal of Employment Contracts**

Defendant Olsen seeks partial summary judgment "on Plaintiffs Bird and Moraros' Section 1981 claims of discrimination and retaliation with regard to their allegations that Olsen participated in the non-renewal of their faculty contracts." (Motion at 1). Olsen argues that he is entitled to summary judgment because there is no evidence that he was involved in the decision not to renew Bird and Moraros' faculty contracts stating:

> the focus of the inquiry is . . . namely what role Olsen had in the action of non-renewal of faculty contracts.
>
> The answer is "none." The individuals involved in the non-renewal of Bird and Moraros' contracts all testified unequivocally that Olsen was not involved in any decision surrounding non-renewal; [sic] that he did not propose non-renewal and that he was not involved in any discussion regarding non-renewal. Thus, there is no longer any dispute of material fact as to Olsen's non-involvement in this decision.

(Motion at 4). Olsen sets forth only three material facts in support of his Motion which are:

> 1. Bird and Moraros are former faculty members at NMSU; their employment contracts were non-renewed on February 13, 2008.
>
> 2. On December 20, 2007, Olsen received a call from a Departmental secretary, who informed him that the NMSU Travel Office was questioning the submission of duplicate travel reimbursements by Moraros and Bird. Olsen contacted NMSU General Counsel, Bruce Kite, who told him to refer the matter to NMSU Audit Services. Olsen did so.
>
> 3. Olsen was not involved in the decision-making processing [sic] leading to the non-renewal of Bird and Moraros' employment contracts; this decision was made solely by then-Dean of CHSS Jeffrey Brandon, then-Department of Health Science Chair James Robinson and then-Provost Waded Cruzado-Salas.

(Motion at 3).

Olsen supports Fact No. 3 with citations to the depositions of Brandon, Robinson and Cruzado. Brandon testified that there were several meetings where the issue of non-renewing Moraros' and Bird's contracts were discussed, that Robinson recommended non-renewal, that Brandon concurred, and that the "final step" was Cruzado's decision. (Motion Ex. B at 95:7-13; 108:3-109:2, Doc. No. 251-2). When asked "What, if any, involvement did Dr. Olsen have in that decision" Robinson answered "None." (Motion Ex. C at 352:21-353:15, Doc. No. 251-3). Olsen cites the following testimony by Cruzado:

> Q: What, if any, role did Dr. Larry Olsen have in the decision that Drs. Bird and Moraros's contracts were not going to be renewed?

> A:   He had expressed the same reservations that Dr. Robinson expressed in regards to the research that Dr. Moraros and Dr. Bird were conducting.
>
> Q:   Okay.
>
> A:   But ultimately, the recommendation came from Dr. Robinson and Dr. Brandon, when he was back in his function as dean.
>
> Q:   So to your recollection, Dr. Olsen never suggested that Drs. Bird and Moraros's contract should not be renewed?
>
> A.   I do not remember him recommending that.

(Motion Ex. D at 134:23-135:12, Doc. No. 251-4). The last line of the colloquy quoted above is only the first part of Cruzado's response. The remainder of her response, not cited by Olsen, reads: "He [Olsen] expressed concerns – well, again, it was a very, a very strong concern about the way and manner in which they were conducting their professional activities." (*Id.* at 135:13-16).

Olsen's conclusion that he was not involved in the decision to non-renew Bird's and Moraros' faculty contract appears to be premised on a narrow definition of the "decision-making process" which limits the process to the meetings between Brandon, Robinson and Cruzado, Robinson's recommendation, Brandon's concurrence and Cruzado's final decision. While Olsen may not have been directly involved in the decision-making process, direct participation is not necessary for liability under 42 U.S.C. § 1983. "The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279-80 (10th Cir. 2008) ("Any official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable"); *Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir. 1996) ("To prevail on a claim for damages for a constitutional violation pursuant to 42 U.S.C. § 1983, a

plaintiff must establish the defendant acted under color of state law and caused or contributed to the alleged violation").

Olsen's three material facts and the supporting exhibits do not address whether he indirectly participated in the non-renewal decision-making process. *See Medlock v. United Parcel Service, Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) ("The burden of showing that no genuine issue of material fact exists is borne by the moving party"); *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) ("[T]he movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.").

Cruzado's testimony suggests that Olsen may have been indirectly involved in the decision-making process because when asked what role Olsen had in the decision Cruzado responded that Olsen expressed reservations and characterized Olsen's reservations as a very strong concern about the way Bird and Moraros were conducting their professional activities. *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008) (court "view[s] the facts, and all reasonable inferences those facts support, in the light most favorable to . . . the nonmoving party).

The Court will deny Olsen's motion for partial summary judgment based on his argument that he did not participate in or contribute to the decision to non-renew Bird's and Moraros' faculty contracts. *See Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1277 (10th Cir. 2010) ("Summary judgment is proper only if 'there is no genuine issue as to any material fact' and 'the movant is entitled to judgment as a matter of law'").

**Qualified Immunity**

"The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

4

of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct.. 808, 815 (2009). "Determining whether a defendant is entitled to qualified immunity involves answering two questions: (1) whether a plaintiff has asserted that the defendant violated a constitutional or statutory right, and if she has, (2) whether that right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right." *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1218 (10th Cir. 2008).

Olsen contends that he is entitled to qualified immunity because his actions did not violate clearly established law which "required some level of involvement in the decision making process leading to termination: actual participation or a recommendation for termination." (Motion at 8). Olsen asserts that such "participation is not present in this case." (*Id.*). Olsen does not argue that the alleged violated right was not clearly established at the time of the alleged violation. (*See* Reply, Doc. 303, filed August 9, 2010).

Plaintiffs argue that Cruzado's "only involvement in any issue regarding Bird and Moraros related to the nonrenewal of their faculty contracts," that the "issue first arose in a meeting with Robinson and Olsen," and that "Robinson and Olsen met with [Cruzado] more than once to discuss their concerns about Bird and Moraros." (Response ¶ 33 at 10, Doc. No. 279, filed July 15, 2010 (*citing* Cruzado's deposition (Ex. 7 of Response) at 17:3-19, 20:4-11, 20:19-21:6, and 135:9-16)). When asked what role Olsen had in the non-renewal decision Cruzado testified that Olsen expressed "a very strong concern about the way and manner in which [Bird and Moraros] were conducting their professional activities." (Response Ex. 7 at 135:9-16). It is thus reasonable to infer that Olsen had input in the non-renewal decision-making process. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) ("[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable

5

to the party opposing the summary judgment motion. In qualified immunity cases, this usually means adopting ... the plaintiff's version of the facts."

There is a genuine issue of material fact as to whether Olsen participated in the non-renewal decision-making process. The facts as developed at trial may show that Olsen set in motion the series of events leading to the non-renewal of Plaintiffs' faculty contracts, or contributed to the decision-making process, knowing, or reasonably should have known, that his actions would cause Brandon, Robinson and Cruzado not to renew Plaintiffs' faculty contracts. Alternatively, the facts may show that Olsen did not initiate the decision-making process and could not have reasonably known that his actions would lead others to the non-renewal of Plaintiffs' faculty contracts. Consequently, the Court cannot make a qualified immunity determination at this time. *See Guffey v. Wyatt*, 18 F.3d 869, 873 (10th Cir. 1994) (court properly denied summary judgment on qualified immunity claim where defendant's claim of qualified immunity was inextricably bound to disputed factual issues); *Ramirez v. City of Wichita*, 78 F.3d 597, 1996 WL 98807 *3 (10th Cir.) (unpublished opinion) (where reasonable inference could be drawn from underdeveloped factual record that would negate a finding of qualified immunity, the district court's judgment on this issue was premature); *DiMarco v. Rome Hospital*, 952 F.2d 661, (2d Cir. 1992) (denial of summary judgment on the issue of qualified immunity was proper where qualified immunity issue is inextricably bound up with the merits of plaintiff's claim). The Court will deny Olsen's motion for summary judgment on the issue of qualified immunity. *See Maestas v. Lujan*, 351 F.3d 1001, 1008 (2003) ("when a defendant has lost his right not to stand trial, the law is clear the [defendant] can reassert [his] qualified immunity claims at and after trial when the factual disputes have been resolved.").

**IT IS SO ORDERED.**

*[signature: Bruce D. Black]*

**BRUCE D. BLACK**
**CHIEF UNITED STATES DISTRICT JUDGE**