IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YELENA BIRD, ROBERT BUCKINGHAM,
FREEDOM CHETENI, JOHN MORAROS
and  SATYA RAO,

                Plaintiffs,

vs.                                                         No. CIV 08-851 BB/LAM

REGENTS OF NEW MEXICO STATE UNIVERSITY,
LARRY OLSEN, in his individual capacity,
JAMES ROBINSON, in his individual capacity,
MICHAEL MARTIN, in his individual capacity, and
ROBERT GALLAGHER, in his individual capacity,

                Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Larry Olsen's Revised Motion for Summary Judgment on Plaintiffs' Claims for First Amendment Retaliation (Doc. No. 365, filed February 16, 2011).  For the reasons stated below, the Court will **DENY** the Motion.

**Background**

Plaintiff Yelena Bird is African American and was a faculty member at New Mexico State University ("NMSU").  (Fourth Amended Complaint ¶ 1 at 1).  Plaintiff Freedom Cheteni is an African from Zimbabwe and was a graduate student at NMSU.  (*Id.* ¶ 2 at 1).  Plaintiff John Moraros is Hispanic and was a faculty member at NMSU.  (*Id.* ¶ 3 at 2).  Plaintiff Satya Rao is Asian and is a tenured faculty member at NMSU.  (*Id.* ¶ 4 at 2).  Defendant Larry Olsen was employed as a professor and associate dean at NMSU.  (*Id.* ¶ 6 at 2).

Plaintiffs alleged that Olsen retaliated against them after they spoke out on matters of public concern, specifically "numerous acts of race discrimination, sex discrimination and retaliation." (*Id.*

¶¶ 162-168 at 34-35). Olsen seeks summary judgment on Plaintiffs' claims of First Amendment retaliation.

**First Amendment Retaliation**

Analysis of freedom of speech retaliation claims is a five-step inquiry. *See Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202-03 (10th Cir. 2007). "First, the court must determine whether the employee speaks pursuant to his official duties," if so, "then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.* at 1202. "Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern." *Id.* "If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends." *Id.* at 1203. "Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer." *Id.* "Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision." *Id.* "Finally, if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech." *Id.* "The first three steps are to be resolved by the district court while the last two are ordinarily for the trier of fact." *Id.*

"Matters of public concern are those of interest to the community, whether for social, political, or other reasons." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d at 1205. "In determining whether speech pertains to a matter of public concern, the court may consider the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals

with personal disputes and grievances unrelated to the public's interest." *Id.*; *see also Leverington v. City of Colorado Springs*, 643 F.3d 719, 727 (10th Cir. 2011) ("Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."). [I]t is not always enough that the subject matter of a communication be one in which there *might* be general interest; rather, what is *actually said* on the topic is the crux of the public concern content inquiry." *Leverington v. City of Colorado Springs*, 643 F.3d at 727 (*emphasis in original*). "A statement does not attain the status of public concern simply because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." *Id.*

Statements that focus on the employee's conditions of her own employment, that do not allege that other employees have been subjected to harassment or retaliation, or that the harassment and retaliation has interfered with the employer's performance of its governmental responsibilities do not involve matters of public concern. *See David v. City and County of Denver*, 101 F.3d 1344, 1356 (10th Cir. 1996). "A number of courts have agreed with *Woodward's* [*v. City of Worland*, 977 F.2d 1392 (10th Cir. 1992)] conclusion that complaints framing sexual harassment allegations as personal grievances rather than as a widespread practice affecting the agency's performance of its public responsibilities do not constitute speech on a matter of public concern." *Id.* n.2.

**Protected Speech**

Olsen seeks summary judgment on the First Amendment retaliation claims of the four plaintiffs remaining in this case: Bird, Moraros, Cheteni and Rao; Plaintiff Buckingham's claims have been dismissed. Olsen contends that the only retaliatory act that he is alleged to have participated in is the termination of employment of Bird and Moraros. (*See* Motion at 2). Olsen further contends that his "involvement in the non-renewal of Bird's and Moraros' employment

contracts was limited to referring investigation of the duplicate travel reimbursements [submitted by Bird and Moraros] to University Audit on the advice of New Mexico State's general counsel on December 20, 2007." (*Id.*). Olsen argues that he is entitled to summary judgment because Bird and Moraros did not engage in any protected speech prior to the alleged retaliatory act on December 20, 2007. (*Id.* at 5-10).

Plaintiffs disagree that Olsen's involvement with the termination of Bird and Moraros' employment was his only retaliatory act and assert that they did engage in protected speech. Plaintiffs state that they spoke out, not only on their own behalf, but in support of others about matters of public concern. (*See* Response at 12, Doc. No. 371, filed March 7, 2011, *citing* Additional Material Facts 1, 11, 14-17, 24-29). Bird and Moraros allege that they engaged in protected speech as follows:

| | |
|---|---|
| 2007 | Moraros informed Olsen and others that Olsen's sexually and racially inappropriate comments and jokes in Moraros' presence were unwelcome. |
| August 2007 | Moraros and Bird made a written complaint to the Chairman of NMSU's Health Science Department about Olsen's offensive racial and sexual communications. |
| Fall 2007 | Moraros advised Olsen that he intended to file a formal complaint with NMSU's Office of Institutional Equity if Olsen continued sending inappropriate emails and making racially inappropriate comments. |
| | Moraros and Bird met together with Olsen and told him they wanted his harassing and discriminatory behavior to stop. |
| Dec. 2007 | Moraros again asked Olsen to stop sending sexually offensive emails to Moraros. |
| | Moraros informed Professor Anderson that complaints Moraros had made to Olsen were not being resolved and asked Professor Anderson to ask Dean Brandon to talk to Olsen. |

> In mid to late December Moraros and Bird submitted a written complaint to Dean Brandon.

(Fourth Amended Complaint ¶¶ 162-168 at 34-35; Response at 2-9, 12).

The Court agrees with Olsen's contention that Bird and Moraros did not engage in any protected speech prior to December 20, 2007. Olsen cites two grievances submitted jointly by Bird and Moraros to James Robinson, the Chair of NMSU's Department of Health Science, on August 17, 2007, and to Jeffrey Brandon, Dean of NMSU's College of Health & Social Services, on December 14, 2007. (Exhibits D and O to Moraros' Deposition which were attached to Olsen's Motion as Exhibit A, Doc. No. 365-1). Those grievances allege that Olsen subjected Bird and Moraros to "racial discrimination, sexual harassment, intimidation, hostile work environment and severe retaliation." (*Id.*). The allegations in those grievances focus on the conditions of Bird and Moraros' employment. They do not allege that other employees have been subject to discrimination, harassment or retaliation. Nor do they allege that the discrimination, harassment and retaliation interfered with NMSU's performance of its responsibilities.

The Court has also reviewed Plaintiffs' Additional Material Facts 1, 11, and 14-17, summarized above, and the citations to the record supporting those facts, which relate to statements Bird and Moraros made in 2007. None of the Additional Material Facts or citations to the record for statements made by Bird and Moraros in 2007 involve matters of public concern because, like the written grievances, the statements focus solely on the conditions of their employment. The Court need not determine whether later statements made by Plaintiffs in 2008 relate to matters of public concern because Olsen states "[i]t is possible that Plaintiffs' later (post-December 2007) speech, to the media and other entities, constitutes speech regarding a matter of public concern." (Motion at 10).

**Retaliation - Termination of Bird and Moraros' Employment**

Olsen contends that the "only retaliatory act that Olsen is even alleged to have participated in is the termination of employment of Bird and Moraros" and that his "involvement in the non-renewal of Bird's and Moraros' employment contracts was limited to referring investigation of the duplicate travel reimbursements [submitted by Bird and Moraros] to University Audit on the advice of New Mexico State's general counsel on December 20, 2007." (Motion at 2).

Bird and Moraros assert that Olsen's involvement in the termination of their employment was not limited to referring the travel reimbursement investigation for audit stating that Olsen also met with the University Provost to discuss the continuation of Bird and Moraros' contracts. (Response ¶ 22 at 7). Provost Cruzado made the decision to not renew Bird and Moraros' contracts. (Brandon Deposition at 108:3-109:2, Doc. No. 365-3 at 3-4). In her deposition, Provost Cruzado testified that she remembered having more than one meeting with Robinson and Olsen in early 2008. (Cruzado Dep. 18:4-21:6, Doc. No. 371-1 at 14). Cruzado also testified as follows:

> Q:  What, if any, role did Dr. Larry Olsen have in the decision that Drs. Bird and Moraros's contracts were not going to be renewed?
>
> Cruzado:  He had expressed the same reservations that Dr. Robinson expressed in regards to the research that Dr. Moraros and Dr. Bird were conducting.
>
> Q:  Okay.
>
> Cruzado:  But ultimately, the recommendation came from Dr. Robinson and Dr. Brandon, when he was back in his function as dean.
>
> Q:  So to your recollection, Dr. Olsen never suggested that Drs. Bird and Moraros's contract should not be renewed?
>
> Cruzado:  I do not remember him recommending that. He expressed concerns – well, again, it was a very, a very strong concern about the way and manner in which they were conducting their professional activities.

(*Id.* at 134:23-135:16).


Olsen has failed to show that there is a genuine dispute as to his lack of involvement with the non-renewal of Bird and Moraros' contracts or that he is entitled to judgment as a matter of law on the retaliation claim regarding the non-renewal of their contracts. Olsen has conceded that "[i]t is possible that Plaintiffs' later (post-December 2007) speech, to the media and other entities, constitutes speech regarding a matter of public concern." (Motion at 10). Although Olsen may not have made an express recommendation regarding the renewal of their employment contracts, Bird and Moraros have demonstrated a factual issue regarding Olsen's involvement in the non-renewal of their contracts by pointing to his expressions of concern during meetings with the Provost in early 2008 prior to the Provost's decision to not renew their contracts. The Court will deny that portion of Olsen's Motion that seeks summary judgment on the retaliation claim regarding the non-renewal of Bird and Moraros' contracts.

**Retaliation - Other Acts**

In addition to his alleged involvment in the termination of Bird and Moraros' employment, Plaintiffs Bird, Moraros, Cheteni and Rao allege that Olsen also engaged in the following retaliatory conduct:

| | |
|---|---|
| Sept. 2006 - May 2008 | Olsen told graduate student King she should be working with him rather than with Moraros and Bird. Olsen repeatedly tried to persuade King to stop working for Moraros and Bird "during the time [she] was at NMSU." King graduated in May 2008. |
| May 2007 | Olsen cancelled two classes to be taught by Moraros. |
| Spring 2007 | Olsen authorized payment from a grant account belonging to Moraros and Bird. |
| August 2007 | Olsen attempted to transfer funds from Moraros and Bird's grant account. |
| | Olsen "registered no disapproval or surprise" when the Chairman of NMSU's Health Science Department said he was gathering evidence |

|            | against Bird and Moraros. |
|---|---|
| Fall 2007  | Graduate student Banegas takes Olsen's comments as a strong warning not to be involved with Moraros and Bird. |
|            | Olsen accused Moraros and Bird of insubordination and disrespect, told them that they were not "our kind of people," and stated that they were not a good fit for NMSU. |
| Dec. 2007  | Olsen pressured graduate student Cheteni to discontinue working with Moraros. |
|            | Olsen sent another sexually offensive email to Moraros, which upset Bird who saw it.  When Moraros asked Olsen to stop sending such emails, Olsen responded that Moraros' complaints would end up costing both [Moraros and his wife Bird their] Ph.D. degrees and [their] jobs at NMSU. |
|            | After Moraros and Bird inadvertently submitted duplicate travel expense reimbursements, Olsen took no steps to investigate the matter or to speak with either Bird or Moraros about it and instead forwarded the matter to NMSU's audit department despite his professed belief that there was no fraud involved.  Olsen also mentioned to another faculty member that there were serious concerns about travel reimbursements for Bird and Moraros. |
| Feb. 2008  | After Moraros and Bird were interviewed by an NMSU auditor, Olsen told Moraros "now we got you." |
| Spring 2008 | Moraros and Bird were only tenure line faculty in the Department of Health Science who were not listed as being eligible to mentor and teach thesis credit hours to graduate students which prevented other students from working with Moraros or Bird. |
| April 2008 | Cheteni, Moraros, Bird and Rao found anonymous, typewritten notes which were threatening and abusive slipped under their office doors. |

(Response at 2-10).

Summary judgment is not appropriate for the retaliation claims based on these acts because Olsen did not address these acts in his revised Motion despite being on notice that Plaintiffs were

asserting claims based on many of these alleged acts.[1] *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-159 (1970) (Summary judgment for defendant reversed because defendant did not carry burden of showing absence of genuine dispute as to material fact); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1200 (10th Cir. 2002) (Before the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its "initial responsibility" of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law"). The Court will deny Olsen's Motion to the extent that it seeks summary judgment on the retaliation claims based upon the alleged acts listed in the preceding paragraph.

**Qualified Immunity**

Plaintiffs have asserted First Amendment retaliation claims against Olsen. (Third Amended Complaint ¶¶ 147 at 37 and 159 at 39, Doc. No. 171, filed march 5, 2010). To prove a First Amendment retaliation claim, a plaintiff "must establish that (1) she was engaged in constitutionally protected activity, (2) the defendants' actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that protected activity, and (3) the defendant's actions were substantially motivated as a response to her protected conduct." *McBeth v. Himes*, 598 F.3d 708, 724 (10th Cir. 2010).

Olsen now moves for summary judgment based on qualified immunity. "When the qualified immunity inquiry turns on a subjective element, as it does when examining motive, the qualified

---

[1] Olsen first moved for summary judgment on Plaintiffs' First Amendment Retaliation claims on June 14, 2010. (*See* Doc. No. 255). Because Plaintiffs' Response (Doc. No. 277, filed July 14, 2010) did not comply with the District of New Mexico's Local Civil Rules, and because Olsen's Reply (Doc. No. 300, filed August 9, 2010) did not address many of additional material facts in Plaintiffs' Response, the Court denied the motion without prejudice and allowed the parties to file revised motion and briefs. (Doc. No. 349, filed January 18, 2011). Plaintiffs' original response alleged that Olsen retaliated against them in various ways in addition to being involved with the nonrenewal of Bird and Moraros' contracts. (Doc. No. 277 at 17-18).

immunity analysis is 'modified slightly.'" *McBeth v. Himes*, 598 F.3d 708, 724 (10th Cir. 2010) (applying slightly modified analysis to a First Amendment retaliation claim). "The defendant must do more than merely raise the [qualified] immunity defense; he must make a prima facie showing of the objective reasonableness of the challenged conduct." *Id.* "If the defendant makes this prima facie showing, the plaintiff must then produce specific evidence of the defendant's culpable state of mind to survive summary judgment." *Id.* at 724-725; *see also Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991) (qualified immunity procedure must be modified slightly when plaintiff's claim contains a subjective element, such as defendant's purpose, motive, or intent); *Lewis v. City of Ft. Collins*, 903 F.2d 752, 755 (10th Cir. 1990).

Olsen's Motion does not discuss the "slightly modified" analysis applicable "when the qualified immunity inquiry turns on a subjective element, as it does when examining motive." *See McBeth v. Himes*, 598 F.3d at 724. Neither does Plaintiffs' Response. (*See* Doc. No. 371, filed March 7, 2011). The Court will **DENY** that portion of Olsen's Motion seeking summary judgment based on qualified immunity) **without prejudice** and will provide the parties an opportunity to address the slightly modified qualified immunity analysis. *See Pueblo Neighborhood Health Centers v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988) (reversing district court that applied the wrong standard in resolving the qualified immunity issue). Olsen may, within 30 days of entry of this Order, file a revised motion.

**IT IS SO ORDERED.**

_____
**BRUCE D. BLACK**
**CHIEF UNITED STATES DISTRICT JUDGE**