IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YELENA BIRD, ROBERT BUCKINGHAM,
FREEDOM CHETENI, JOHN MORAROS
and  SATYA RAO,

        Plaintiffs,

vs.          No. CIV 08-851 BB/LAM

REGENTS OF NEW MEXICO STATE UNIVERSITY,
LARRY OLSEN, in his individual capacity,
JAMES ROBINSON, in his individual capacity,
MICHAEL MARTIN, in his individual capacity,
ROBERT GALLAGHER, in his individual capacity, and
MICHAEL ZIMMERMAN, in his individual capacity,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Freedom Cheteni's Motion For Partial Summary Judgment Against Defendants Regents of New Mexico State University And Michael Zimmerman On Retaliation Claims In Counts I, II & IV of Fourth Amended Complaint (Doc. No. 363, filed February 14, 2011).  For the reasons stated below, the Court will **DENY** the Motion.

**Retaliation**

Plaintiff Freedom Cheteni claims that the following conduct of New Mexico State University ("NMSU") and/or Defendant Michael Zimmerman was retaliatory:  (1) the revocation of in-state tuition; (2) the denial of a graduate assistantship; (3) the filing of misconduct charges against him; and (4) termination of his status in the SEVIS international student database.  (*See* Motion at 2).

To prevail on his retaliation claims, Cheteni must establish "that retaliation played a part in the employment decision." *Fye v. Okla. Corp. Comm.*, 516 F.3d 1217, 1224 (10th Cir. 2008). Cheteni may choose from two methods to meet this burden.  He may rely on the framework set forth

in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), "under which the plaintiff bears the initial burden of establishing a prima facie case of discrimination. If the defendant is [then] able to articulate a legitimate nondiscriminatory reason for the adverse action, the plaintiff must then show that the articulated reasons are a pretext for retaliation." *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 549-50 (10th Cir.1999).

Cheteni may also choose to show retaliatory animus directly, "in which case the *McDonnell Douglas* framework is inapplicable." *Medlock*, 164 F.3d at 550. To prevail via this direct method, Cheteni must present "evidence that directly shows retaliation played a motivating part in the employment decision at issue." *Fye*, 516 F.3d at 1226. Once Cheteni meets that burden, "the burden of persuasion shifts to the defendant to prove that it would have taken the same action absent the retaliatory motive." *Id.* at 1225.

Cheteni relies on both methods of establishing that retaliation played a part in NMSU and Zimmerman's actions. (*See* Motion n.2 at 12).

**In-State Tuition and SEVIS Database**

Cheteni, a native and citizen of Zimbabwe, was a graduate student at New Mexico State University. (*See* Motion ¶ 1 at 2). NMSU and Zimmerman, who was the NMSU Registrar, classified Cheteni as a New Mexico resident for tuition purposes based on Cheteni's petition for political asylum with the United States government. (*See id.* ¶ 2 at 2). Zimmerman later changed Cheteni's tuition status from in-state to out-of-state allegedly because Cheteni's visa status indicated his asylum petition was no longer pending. (*See id.* ¶ 12 at 5).

As a result of the change in Cheteni's tuition status and the discontinuation of his graduate assistantship, Cheteni was charged out-of-state tuition for the Fall 2008 semester, was unable to pay the out-of-state tuition, and was unable to register for classes for the Spring 2009 semester. (*See*

*id.* ¶¶ 34-36 at 9). NMSU subsequently terminated Cheteni's status in the SEVIS international student database and Zimmerman wrote a letter to an Immigration and Customs Enforcement ("ICE") agent advising him that Cheteni was not registered at NMSU for the Spring 2009 semester. (*See id.* ¶ 39 at 10). Armed ICE agents later arrested Cheteni who was detained for approximately five months.  (*See id.* ¶ 40 at 10).

Cheteni seeks partial summary judgment against NMSU and Zimmerman on his retaliation claims premised on the denial of in-state tuition and the termination of his status in the SEVIS international student database. (Motion at 2, 10, 19). Zimmerman has filed a motion seeking summary judgment on Cheteni's retaliation and discrimination claims based on qualified immunity. (*See* Doc. Nos. 355 and 356, filed January 28, 2011). Because Zimmerman's motion for summary judgment based on qualified immunity is still pending, the Court will deny without prejudice those portions of Cheteni's Motion that seeks summary judgment on his retaliation claims related to in-state tuition and the SEVIS database. Cheteni may, within 30 days of entry of any order determining the issue of Zimmerman's qualified immunity, file a motion for partial summary judgment on his retaliation claims related to in-state tuition and the SEVIS database.

**Graduate Assistantship**

During the 2007-2008 school year, Cheteni was employed as a Graduate Assistant in the Department of Health Science. (*See* Motion ¶ 3 at 3). In the summer of 2008, NMSU's Department of Health Science declined to continue Cheteni's Graduate Assistant position for the Fall 2008 semester, allegedly because he was no longer enrolled in the Masters in Public Health ("MPH") program. (*See id.* ¶ 25 at 7). Cheteni contends that Stephen Arnold, the interim Head of the Department of Health Science, continued to withhold a graduate assistant position after Cheteni

3

informed Arnold that he remained a student in the MPH program. (*See id.* ¶ 27 at 8). Cheteni later emailed Arnold and complained that the decision to not continue his graduate assistantship was discriminatory. (*See id.*).

Cheteni suggests that NMSU's purported reason for not continuing his graduate assistantship, i.e. that he was no longer enrolled in the MPH program, is pretext. (*See* Motion at 19-20). Cheteni contends that NMSU's International Admissions office contacted him to confirm that he remained in the MPH program and had not withdrawn. (*See id.* ¶ 26 at 7). Cheteni supports this contention by citing to "6.17.08 correspondence from International Admissions, attached hereto as Exhibit S." (*Id.*). Exhibit S is an excerpt from the deposition of Jeffrey Brandon, not correspondence from International Admissions. The Court did not find the correspondence from International Admissions in any of the 20 exhibits attached to Cheteni's Motion.

Cheteni also cites an email from Arnold as evidence that Cheteni was enrolled in the MPH program. (*See id.* Ex. L which appears to be a memo from Arnold, not an email, with an email from Cheteni attached). In his memo Arnold states that he "feel[s] it is [in] the best interest of the students, faculty, and staff in the Department of Health Science to permanently remove [Cheteni] from the [MPH] degree program." (*Id.*). Cheteni contends that the need to "remove" Cheteni from the MPH program shows that he was still enrolled in the MPH program. (*See* Motion at 20). While the phrase "permanently remove" is consistent with Cheteni being enrolled in the MPH program, it is also consistent with Cheteni being temporarily not enrolled in the program. Furthermore, Cheteni does not set forth the criteria defining the status "enrolled" for graduate assistantship eligibility. Cheteni's email, which Arnold attached to his memo, is ambiguous as to whether Cheteni had, at that point in time, registered for any MPH classes. (*See* Ex. L, Doc. No. 363-6 at

2 (Cheteni writes "Registration for MPH courses is still open.")).  Cheteni has not shown that there is no genuine dispute as to whether he was enrolled in the MPH program.

Cheteni also argues that Arnold's memo is direct evidence of retaliatory intent.  (*See* Motion at 20).  The Court has reviewed Arnold's memo with Cheteni's attached email.  In his email, Cheteni states he is "in receipt of a letter from Dr. Arnold informing me that NMSU has terminated my employment" and accuses Arnold of discrimination and retaliation.  (Motion Ex. L).  Cheteni does not explain how Arnold's memo and Cheteni's "accusations," both of which occurred after the termination of Cheteni's graduate assistantship, show that the termination of Cheteni's graduate assistantship was retaliatory.

The Court will deny that portion of Cheteni's Motion seeking summary judgment on his retaliation claim premised on the termination of his graduate assistantship because Cheteni has not shown that he is entitled to summary judgment as a matter of law.   *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1200 (10th Cir. 2002) (Before the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its "initial responsibility" of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law").

**Misconduct Charges**

Cheteni contends that the Head of the Department of Health Science, Stephen Arnold, wanted to remove Cheteni from the MPH program because he felt Cheteni's complaints of discrimination were harmful and destructive to the faculty, to the staff, and to the students.  (*See* Motion ¶ 29 at 8).  Arnold filed a formal written complaint with NMSU's Student Judicial Services related to an incident in which Cheteni had allegedly been aggressive, disrespectful, arrogant, and

demanding. (*See id.* ¶ 30 at 8). Student Judicial Services held a hearing on Arnold's charges against Cheteni and dismissed those charges after being "unable to reasonably determine [Cheteni's] culpability." (*See id.* ¶ 32 at 9, Ex. N).

According to the documentation that Arnold sent to Student Judicial Services, Cheteni approached Arnold and demanded that the Department of Health Science create a class so that Cheteni could complete a core required MPH course under a certain professor. (*See* Motion Ex. M, Doc. No. 363-6 at 3). Arnold stated that when he informed Cheteni that it was not possible, Cheteni "became agitated and was visibly upset." (*See id.*). Arnold also stated that Cheteni's "barrage of questions and demands" made other staff and visitors present "very uncomfortable." (*See id.*). Arnold described Cheteni's "tone and behavior as aggressive, disrespectful, arrogant, and demanding." (*See id.*).

Cheteni disputes the truth of some of the statements in Arnold's complaint but does admit that he went to Arnold's office to request a proposed independent study for the fall semester. (*See* Reply at 12-13, Doc. No. 386, filed March 25, 2011). Cheteni argues that "because no evidence has been provided that Cheteni's behavior was serious enough to warrant a complaint to Student Judicial Services, the only possible conclusion is that this action was retaliatory." (*Id.* at 13). The Court disagrees. NMSU and Zimmerman point to Arnold's deposition testimony where Arnold testified that he was concerned about Cheteni's behavior, tone and volume, and that other persons were present and uncomfortable with the interaction between Arnold and Cheteni. (Response at 11 (*citing* Ex. 3 of Doc. No. 273, filed July 6, 2010)). The Court cannot make fact findings or credibility determinations to decide whether Cheteni's version of the interaction or Arnold's version is accurate. *See Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (The question in

deciding a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."). *Scott v. Harris*, 550 U.S. 372, 378 (2007) ("[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion"). NMSU and Zimmerman have set forth a legitimate nondiscriminatory reason for Arnold's filing of the complaint and supporting the contention that he would have filed the complaint absent any alleged retaliatory motive. The Court will deny that portion of Cheteni's Motion that seeks summary judgment on his retaliation claim premised on the misconduct charges.

**IT IS SO ORDERED.**

*[signature: Bruce D. Black]* _____

**BRUCE D. BLACK**
**CHIEF UNITED STATES DISTRICT JUDGE**