IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YELENA BIRD, ROBERT BUCKINGHAM,
FREEDOM CHETENI, JOHN MORAROS
and SATYA RAO,

               Plaintiffs,

vs.                                                            No. CIV 08-851 BB/LAM

REGENTS OF NEW MEXICO STATE UNIVERSITY,
LARRY OLSEN, in his individual capacity,
JAMES ROBINSON, in his individual capacity,
MICHAEL MARTIN, in his individual capacity, and
ROBERT GALLAGHER, in his individual capacity,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Larry Olsen's Revised Motion for Summary Judgment on Plaintiff Satya Rao's Claims Pursuant to 42 U.S.C. §§ 1981 and 1983 (Doc. No. 364, filed February 16, 2011). For the reasons stated below, the Motion will be **GRANTED in part** and **DENIED in part without prejudice**. Olsen may, within 30 days of entry of this Order, file a motion for summary judgment on Rao's racial discrimination/adverse employment action claim.

**Background**

Plaintiff Satya Rao is originally from India, is of Asian ancestry and is a professor at New Mexico State University. (Response at 2, Doc. No. 372, filed March 7, 2011). Defendant Larry Olsen was the Associate Dean of the College of Health and Social Sciences at NMSU. (*Id.*). Rao claims that Olsen violated 42 U.S.C. § 1981 "by discriminating against her due to her race, both by taking adverse actions against her and by creating a hostile work environment, and by retaliating

against her for engaging in protected activity." (Response at 1, Doc. No. 372, filed March 7, 2011).

**Gender Discrimination**

Rao alleged that Olsen subjected her to degrading remarks. (*See* Fourth Amended Complaint ¶ 100 at 24-25, Doc. No. 348, filed January 18, 2011). Rao contends that Olsen referred to her as "girl" approximately five time during 2006 and 2007. (Rao Deposition at 226:12-25; Doc. No. 364-1 at 6). Olsen asserts that "Rao's claims regarding the 'hey girl' comments allegedly made by Olsen fail as a matter of law to the extent they are based on gender or sex" because 42 U.S.C. § 1981 applies only to racial discrimination and not to gender discrimination. (Motion at 6-7). Rao states that she "has not claimed gender discrimination." (Response at 9-10). Therefore, the Court will deny as moot that portion of Olsen's Motion that seeks summary judgment on Rao's gender discrimination claims.

**Hostile Work Environment**

Rao claims that Olsen violated 42 U.S.C. §§ 1981 by discriminating against her due to her race by creating a hostile work environment. To survive summary judgment on a claim alleging a racially hostile work environment, Rao "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that the victim was targeted for harassment because of [her] race or national origin." *Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675, 680 (10th Cir. 2007). The Court "consider[s] the work atmosphere both objectively and subjectively, looking at all the circumstances from the perspective of a reasonable person in the plaintiff's position . . . and may consider the conduct's frequency and severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the plaintiff employee's work

performance." *Tademy v. Union Pacific Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008) ("The inquiry is particularly unsuited for summary judgment because it is quintessentially a question of fact.").

 Olsen argues that his alleged use of the phrase "hey girl" toward towards Rao does not rise to the level of a hostile racial environment sufficient to sustain a claim under Section 1981. (Motion at 2, 7-9). Rao testified that Olsen referred to her as "girl" "up to five times, probably" during 2006 and 2007 and that Olsen never referred to her as "girl" after Rao spoke with Olsen about the fact that it bothered her. (Rao Deposition at 226:12-25; Doc. No. 364-1 at 6). One witnesses testified that Olsen referred to Rao as "unkempt, she looks like a black bag lady that's crazy" outside of Rao's presence. (Moraros Deposition at 199:11-13, Doc. No. 372-2 at 6). Rao testified that while Olsen's comments offended her and made her "fearful" and "quite worried," her job performance did not suffer. (Rao Deposition at 230:1-20; Doc. No. 364-1 at 19). Rao also testified that other than comments that Olsen made to her or about her, Olsen did not directly take any other improper actions against her. (Rao Deposition at 198:2-10, Doc. No. 364-1 at 17, filed February 16, 2011).

 Olsen's referring to Rao as "girl" five times over a period of two years and a comment to another person regarding her appearance, while perhaps offensive, by themselves are not sufficiently severe or pervasive to alter the conditions of Rao's employment and create an abusive working environment. *See Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675, 680 (10th Cir. 2007). ("A plaintiff does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments.").

 Rao contends that Olsen indirectly created a hostile work environment stating "there is ample evidence from which a reasonable factfinder could determine that Rao was subjected to an objectively hostile work environment and could similarly conclude that Olsen contributed to the

creation of this environment." (Response at 12-13). Rao states that it is not necessary that Olsen had perpetrated every act so long as he set the acts in motion. (*See id.* at 13). Rao argues that she was subjected to a hostile work environment because she:

> was denigrated in front of other faculty members in such a way that others also felt free to treat her with disrespect. She was held to different standards than non-minorities in promotion opportunities, service and mentoring opportunities were withheld from her, she was provided a lower annual salary than other, more junior, non-minority faculty and, on at least one occasion, was provided with less income than had been contractually agreed to for teaching summer classes. In addition, Rao was advised that Department administrators, including Olsen, were trying to force her to leave NMSU and were making disparaging racial comments about her. When Rao and her colleagues received threatening anonymous notes containing offensive racial epithets, the Dean commented that it was "their turn" to receive notes. The university took no action to condemn the notes. Rao was also subjected to screaming and other intimidating behavior by her supervisors when she brought up issues of discrimination.

(Motion at 12) (citations to Additional Material Facts omitted).

"A claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement." *Allen v. Denver Public School Bd.*, 928 F.2d 978, 983 (10th Cir. 1991). "There must be some affirmative link to causally connect the actor with the discriminatory action." *Id.*; *Mink v. Knox*, 613 F.3d 995, 1001 (10th Cir. 2010) (plaintiff may demonstrate causation by showing an affirmative link between the constitutional deprivation and the defendant's exercise of control or direction). The Court has reviewed Rao's 30 Additional Material Facts and the portions of the record cited in support of those facts. Not one of those facts alleges an affirmative link to causally connect Olsen with the alleged discriminatory actions that purportedly constituted a hostile work environment.

The closest Rao comes to establishing an affirmative link to causally connect Olsen with the alleged discriminatory actions is through some allegations regarding Olsen's relationship with and expectations of Robinson, and statements made by Olsen. According to Rao, Olsen and Robinson

were friends, Olsen hired Robinson to be the Department Head, and Robinson took several adverse actions against Rao.  (*See* Response ¶¶ 4-6, 11-13, 18, 21, 23).  Olsen stated to one professor that "heads will roll when Robinson comes aboard" and to other persons that Robinson was going to "clean house."  (*Id.* ¶ 6).  Olsen also allegedly stated that "Dr. Rao will not be here very long" and "We'll make it uncomfortable for her."  (*Id.* ¶ 8).  At most, these facts show that Olsen may have been in a position to exercise control or direction over Robinson's actions but do not establish that Olsen actually exercised such control or direction over Robinson or anyone else.  *See Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107 (10th Cir. 2009) ("a promise in itself contains no assertion of fact other than the implied representation that the speaker intends to perform the promise").

Despite Olsen, Robinson and other witnesses having been deposed, Rao only sets forth facts that show Olsen may have had the opportunity to set in motion the acts leading to a hostile work environment but no facts suggesting that he was actually involved albeit indirectly.  "In a response to a motion for summary judgment, a party cannot rest on ignorance of [the] facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."  *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 Fed.Appx. 887, 891 (10th Cir. 2010) (*quoting Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)); *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir.2003) ("Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment.").  The Court will grant that portion of Olsen's Motion that seeks summary judgment on Rao's hostile work environment claim against Olsen.

**Retaliation**

Rao alleges that Olsen retaliated against her in violation of 42 U.S.C. § 1981.  (Response at 1).  In analyzing retaliation claims under Section 1981, courts "apply the three-part test established

in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) . . . which requires the plaintiff to first establish a prima facie case." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008). To establish a prima facie case of retaliation, Rao "must show that (1) [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Id.* at 1212.

Rao states that she suffered the following adverse actions: (1) denial of promotion, (2) pay disparities, (3) not allowing her to sit on committees, (4) being paid less than stated in her contract, (5) removal from her position as the MPH/MSW liaison, and (6) being subjected to different promotion standards than had been used for individuals previously promoted. (Response at 2-9, 13-16). Rao cited these adverse actions to support her hostile work environment claim.

Olsen argues that there is no evidence to support any allegation that he participated in any retaliatory actions against Rao. Rao testified that other than comments that Olsen made to her or about her, there were no "other improper actions that [Rao], in the context of this lawsuit, [is] contending were [directly] taken by Dr. Olsen." (Rao Deposition at 198:2-10, Doc. No. 364-1 at 17, filed February 16, 2011). Rao also testified that she was "not contending that Dr. Olsen had any part in any of the promotion and tenure decisions." (*Id.* at 198:23-199:5). Rao's additional material facts regarding adverse actions and the citations to the record supporting those facts either do not identify the actor or identify persons other than Olsen as the actors.

Rao now contends that Olsen is liable because he caused the adverse actions indirectly. (Response at 14-15, 19). Rao states that "[w]hile Olsen was not Rao's official or direct supervisor in the College of Health and Social Services, he indirectly had a role of significant influence over Rao and other faculty members." (Response ¶ 9 at 4, citing Ex. 1 at 227:10-19, 229:11-20. Ex. 1

6

contains excerpts of her deposition, however the cited pages were not included with Ex. 1).  Rao goes on to state, without citation to the record, that Olsen "exercised this influence through his authority over and friendship with Rao's direct supervisors.  (*Id.*).  Rao concludes that "[g]iven his influential position as a senior administrator, Olsen was in a position to influence others to cause his desired outcome."  (Response at 19).

Rao's allegation that Olsen was in a position to influence others to cause his desired outcome does not create a genuine issue of material fact and, even if true, is not sufficient to overcome a motion for summary judgment. *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d at 1136.  It merely shows that Olsen had the opportunity to exercise his influence.  Rao does not cite to any portions of the record that indicate that Olsen actually exercised his alleged influence such that a factfinder could determine that Olsen was  personally involved, if only indirectly, and causally connect Olsen with the alleged retaliatory actions.  *See Allen v. Denver Public School Bd.*, 928 F.2d at 983.  The Court will grant that portion of Olsen's Motion that seeks summary judgment on Rao's retaliation claim under 42 U.S.C. § 1981.

**Adverse Actions**

Rao asserts three claims against Olsen under 42 U.S.C. § 1981: (1) that he discriminated against her due to her race by creating a hostile work environment, (2) by retaliating against her for engaging in protected activity, and (3) that he discriminated against her due to her race by taking adverse actions against her.  (*See* Response at 1).  The Court, having ruled above on the first two claims, now turns to Rao's third claim, discrimination by adverse actions.

Rao argues that Olsen has not moved for summary judgment on her racial discrimination claim relating to adverse employment actions because "Olsen neither argues that Rao cannot demonstrate a prima facie case, nor does he attempt to set forth a legitimate, non-discriminatory

7

reason for his own actions.  (*See* Response n.3 at 13).  In his Reply Olsen states that he has moved for summary judgment on all of Rao's claims against him, including her discrimination/adverse actions claim.  (*See* Doc. No. 381, filed March 23, 2011).  However, Olsen's Motion does not address the legal standard for racial discrimination relating to adverse employment actions.  *See Carney v. City and County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (To establish a prima facie case of discrimination under Section 1981, a plaintiff "must demonstrate (1) membership in a protected class (2) adverse employment action, and (3) disparate treatment among similarly situated employees").  Olsen apparently did not include Rao's racial discrimination/adverse actions claims in his Motion because he did not realize Rao was making the claims based on his alleged indirect involvement.  Olsen states that he based his Motion on the allegations in the Fourth Amended Complaint which he contends are "framed in the broadest and most vague terms possible" and Rao's testimony that she was "not contending that Dr. Olsen had any part in any of the promotion and tenure decisions."  (*See* Reply at 5-7, Doc. No. 381, filed March 23, 2011; Rao Deposition at 198:23-199:5).

The Court will deny without prejudice that portion of Olsen's Motion which he contends seeks summary judgment on Rao's racial discrimination/adverse employment action claim because Olsen's Motion did not address the facts with respect to the relevant legal standard.  *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1200 (10th Cir. 2002) ("Before the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its 'initial responsibility' of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law").

The Court will allow the parties to submit additional briefs to determine whether a trial on Rao's racial discrimination/adverse employment action claim is necessary.  *See Berry v. T-Mobile*

*USA, Inc.*, 490 F3d. 1211, 1216 (10th Cir. 2007) ("The purpose of a summary judgment motion is to assess whether a trial is necessary"); *Olsen v. New Mexico*, 128 Fed.Appx. 707, 711 (10th Cir. 2005) (courts have inherent power to regulate federal dockets and promote judicial efficiency). Olsen may, within 30 days of entry of this Order, file a motion for summary judgment on Rao's racial discrimination/adverse employment action claim.

    **IT IS SO ORDERED.**

                                             **BRUCE D. BLACK**
                                             **CHIEF UNITED STATES DISTRICT JUDGE**