IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YELENA BIRD, ROBERT BUCKINGHAM,
FREEDOM CHETENI, JOHN MORAROS
and  SATYA RAO,

                Plaintiffs,

vs.                                                                            No. CIV 08-851 BB/LAM

REGENTS OF NEW MEXICO STATE UNIVERSITY,
LARRY OLSEN, in his individual capacity,
JAMES ROBINSON, in his individual capacity,
MICHAEL MARTIN, in his individual capacity, and
ROBERT GALLAGHER, in his individual capacity,

                Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Larry Olsen's Second Revised Motion for Summary Judgment on Plaintiffs' Claims for First Amendment Retaliation (Doc. No. 413, filed October 7, 2011).  For the reasons stated below, the Motion is **GRANTED in part** and **DENIED in part.**

**Background**

Plaintiff Yelena Bird is African American and was a faculty member at New Mexico State University ("NMSU").  (Fourth Amended Complaint ¶ 1 at 1).  Plaintiff John Moraros is Hispanic and was a faculty member at NMSU.  (*Id.* ¶ 3 at 2).  Plaintiff Satya Rao is Asian and is a tenured faculty member at NMSU.  (*Id.* ¶ 4 at 2).  Plaintiff Freedom Cheteni is an African from Zimbabwe and was a graduate student at NMSU.  (*Id.* ¶ 2 at 1).  Defendant Larry Olsen was employed as a professor and associate dean at NMSU.  (*Id.* ¶ 6 at 2).

Plaintiffs alleged that Olsen retaliated against them after they spoke out on matters of public concern, specifically "numerous acts of race discrimination, sex discrimination and retaliation." (*Id.* ¶¶ 162-168 at 34-35). Olsen previously sought summary judgment on Plaintiffs' claims of First Amendment retaliation. (*See* Doc. No. 365, filed February 16, 2011). None of the parties' briefs regarding Olsen's previous motion for summary judgment discussed the "slightly modified" analysis applicable "when the qualified immunity inquiry turns on a subjective element, as it does when examining motive." *McBeth v. Himes*, 598 F.3d 708, 724 (10th Cir. 2010) (applying slightly modified analysis to a First Amendment retaliation claim). The Court denied Olsen's motion without prejudice and provided the parties with an opportunity to address the slightly modified qualified immunity analysis. (*See* Mem. Op. and Order at 9-10, Doc. No. 409, filed September 7, 2011). Olsen subsequently filed the revised motion now before the Court. The parties disagree as to which of the two qualified immunity analyses in *McBeth v. Himes* apply to Olsen.

***McBeth v. Himes***

In *McBeth v. Himes*, an operator of a daycare facility brought an action against a police officer and employees of the Colorado Department of Health Services ("DHS"). DHS had issued a license allowing the operator to operate a daycare facility at her home. *See McBeth v. Himes*, 598 F.3d at 712. After receiving a report that the operator's adult son, who lived in the operator's home/daycare facility, had sexually assaulted two children, the police went to the operator's home and arrested the adult son. *See id.* The officer assigned to investigate the charges against the adult son asked the operator for her daycare records. *See id.* On the advice of her attorney, the operator declined to provide some records to the officer. *See id.* at 713. The officer complained to the DHS supervisor that the operator was refusing to cooperate with the police investigation by withholding the records of her former daycare clients. The DHS supervisor informed the operator that DHS

would suspend her license because of the officer's complaint that she was not cooperating with the police. *See id.*

The operator brought an action against the officer and the DHS employees claiming that the officer and DHS retaliated against her for exercising her First Amendment right to consult with an attorney, the officer by calling DHS and DHS by threatening to suspend her license.[1] The officer and DHS moved for summary judgment based on qualified immunity. On appeal, the Tenth Circuit used two different analyses to evaluate the officer's and the DHS employees' qualified immunity defenses.

The Tenth Circuit used the "slightly modified" qualified immunity analysis regarding the DHS employees. "When the qualified immunity inquiry turns on a subjective element, as it does when examining motive, the qualified immunity analysis is 'modified slightly.'" *McBeth v. Himes*, 598 F.3d 708, 724 (10th Cir. 2010) (applying slightly modified analysis to a First Amendment retaliation claim). "The defendant must do more than merely raise the [qualified] immunity defense; he must make a prima facie showing of the objective reasonableness of the challenged conduct." *Id.* "If the defendant makes this prima facie showing, the plaintiff must then produce specific evidence of the defendant's culpable state of mind to survive summary judgment." *Id.* at 724-725.

The Tenth Circuit used the "multi-layered causation" approach to analyze the officer's entitlement to qualified immunity. The Tenth Circuit noted that the operator's claim against the officer is not an "ordinary" retaliation claim but instead is one for "successful retaliatory

---

[1] To prove a First Amendment retaliation claim, a plaintiff "must establish that (1) she was engaged in constitutionally protected activity, (2) the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that protected activity, and (3) the defendant's actions were substantially motivated as a response to her protected conduct." *McBeth v. Himes*, 598 F.3d 708, 724 (10th Cir. 2010).

inducement" of DHS to seek suspension of the operator's license. *McBeth v. Himes*, 598 F.3d at 719-720. "Ordinary" retaliation claims are those "where the government agent allegedly harboring the animus is also the individual allegedly taking the adverse action." *Hartman v. Moore*, 547 U.S. 250, 259 (2006). Successful retaliatory inducement claims are those where the defendant who allegedly acted with retaliatory animus is not the same individual as the one who caused the plaintiff's injury. Such "'multi-layered causation' complicates the court's inquiry into whether the defendant's retaliatory animus caused the adverse action that harmed the plaintiff." *McBeth v. Himes*, 598 F.3d at 720. The Tenth Circuit concluded that the *Hartman* rule is applicable to cases with multi-layered causation. *See id.* at 720. "If there is a finding that retaliation was not the but-for cause of the [adverse action], the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." *Hartman*, 547 U.S. at 260. To establish but-for causation, a plaintiff must allege and prove that the state officials taking the adverse action lacked cause. *Id.* at 718-720.

**Bird and Moraros**

Bird and Moraros are former faculty members at NMSU. (*See* Motion at 2). In late August, 2007, Bird and Moraros submitted a written complaint about Olsen's behavior to the Chair of the Health Science Department James Robinson. (*See* Response ¶ 10 at 4). In November 2007, Bird and Moraros submitted duplicate travel expense reimbursement to NMSU. (*See id.* ¶ 14 at 5). After the travel reimbursement issue came to Olsen's attention in December 2007, Olsen forwarded the matter to NMSU's audit department for investigation. (*See id.*). The audit department prepared a report and forwarded it to Provost Cruzado.

Olsen met with Defendant Robinson and Provost Cruzado to discuss his concerns regarding Bird and Moraros' handling of the travel reimbursement issues, as well as other professional conduct

issues. (Motion at 2-3). Jeff Brandon and Robinson recommended to Provost Cruzado that Bird and Moraros' faculty contracts not be renewed. (*See* Deposition of Jeffrey Brandon, Doc. No. 365-3 at 108:8-109:2, filed February 16, 2011 (testifying that Brandon and Robinson recommended nonrenewal and that the Provost Cruzado made the final decision not to renew Bird and Moraros' contracts); Deposition of James Robinson III, Doc. No. 365-4 at 352:21-353:9, filed February 16, 2011 (testifying that Olsen had no involvement in the decision not to renew the contracts and that Olsen was not present at the meetings between Robinson, Brandon and Cruzado to discuss nonrenewal); Deposition of Waded Cruzado, Doc. No. 365-5 at 134:23-135:16, filed February 16, 2011 (testifying that Olsen's only role in the decision not to renew Bird and Moraros' contracts was that he expressed concerns about the way and manner in which they were conducting their professional activities, that the recommendation not to renew came from Robinson and Brandon, and that Cruzado did not remember Olsen recommending that Bird and Moraros' contracts should not be renewed)). Bird and Moraros' faculty contracts were nonrenewed on February 13, 2008. (Motion at 2). Bird and Moraros claim that Olsen retaliated against them for exercising their First Amendment rights by urging the final decision-makers not to renew their employment contracts.

Olsen argues that the Court should grant summary judgment in his favor on Bird and Moraros' claims on qualified immunity grounds based on the multi-layered causation analysis. Olsen states that the multi-layered causation standard articulated in *McBeth* and *Hartman* "applies in cases where the requisite causal connection is between the retaliatory animus of one person and the action of another." (Motion at 4-6). Olsen points out that while he expressed his concerns regarding Bird and Moraros to Robinson and Cruzado, he did not make the decision not to renew their contracts. Consequently, Olsen concludes, Plaintiffs must allege that Cruzado lacked cause not to renew Bird and Moraros' contracts. (*See id.* at 5).

5

Plaintiffs argue that this case is an "ordinary retaliation" case and therefore the multi-layer causation analysis is not applicable. (Response at 13). Plaintiffs state that "*Mcbeth* defined 'ordinary' retaliation to include the instance where a public employee 'claim[s] he was fired for speech criticizing the government.'" (*Id.*). Plaintiffs mischaracterize the definition of "ordinary" retaliation claims." "Ordinary" retaliation claims are those "where the government agent allegedly harboring the animus is also the individual allegedly taking the adverse action." *Hartman*, 547 U.S. at 259. The multi-layered causation analysis is applicable in those cases where the defendant who allegedly acted with retaliatory animus is not the same individual as the one who caused the plaintiff's injury. *See McBeth v. Himes*, 598 F.3d at 719-720.

Plaintiffs also argue that this case is distinguishable from both *McBeth* and *Hartman* because the defendants in *McBeth* and *Hartman* "were responsible solely for reporting alleged misconduct of the plaintiff to the prosecuting authority, after which their involvement in any decision-making ceased." (Response at 12). Plaintiffs contend that "Olsen not only reported alleged misconduct by Bird and Moraros, but subsequently involved himself in meetings with the final decision-makers, during which he urged them to accept his views on Bird and Moraros." (*Id.* at 13). Instead of distinguishing this case from *McBeth* and *Hartman*, Plaintiffs' contention that Olsen urged the final decision-makers to accept his views supports Olsen's argument that this is a case of "successful retaliatory inducement" for which the multi-layered causation analysis is applicable.

The Court concludes that Bird and Moraros' claims against Olsen regarding nonrenewal of their contracts are not an "ordinary" retaliation claims because the individual allegedly harboring the retaliatory animus, Olsen, is not the individual that took the adverse action of making the final decision not to renew the contracts. Consequently, the multi-layered analysis in *McBeth* and *Hartman* applies.

To prove the causation element of their retaliation claim Bird and Moraros must allege and prove that Cruzado lacked cause not to renew their contracts. They have not done so. They do not dispute that NMSU's policy manual allows nonrenewal of contracts. The policy states that "nonrenewal of the contract may be without implication of criticism or specification of cause." (Doc. No. 389-4, filed April 15, 2011). After reading the audit report and discussing the report with the auditor, Cruzado concluded that Bird and Moraros attempted to defraud NMSU and that the attempt to defraud NMSU was enough cause not to renew their contracts. (Cruzado Deposition at 33:3-35:13; 41:16-42:24, Doc. No. 389-7, filed April 15, 2011). Plaintiffs do not dispute Cruzado's conclusion that an attempt to defraud is sufficient cause not to renew contracts. (*See* Response at 11-14). Cruzado had reason not to renew Bird and Moraros' contracts; accordingly, Bird and Moraros cannot prove the causation element of their retaliation claim against Olsen. Olsen is therefore entitled to summary judgment on the ground of qualified immunity on this claim, because he did not violate any clearly established right possessed by Bird and Moraros, even if he met with Cruzado with the motive to retaliate against Bird and Moraros. *See McBeth v. Himes*, 598 F.3d at 720.

**Rao and Cheteni**

Olsen contends that he is entitled to summary judgment on Rao's and Cheteni's First Amendment retaliation claims because neither Rao nor Cheteni engaged in protected activity and both have failed to demonstrate "but for" causation regarding the alleged retaliatory acts. (*See* Motion at 6-7). A party moving for summary judgment "must set out a concise statement of all of the material facts as to which the movant contends no genuine issue exists. The facts must be numbered and must refer with particularity to those portions of the record upon which the movant relies." D.N.M.LR-Civ.56.1(b). Olsen's Motion offers no undisputed material facts regarding

Rao's or Cheteni's claims.  (*See id.* at 2-3).  Instead he submits a one-paragraph argument each regarding Rao and Cheteni in which he refers to previous Court opinions.  The Court will not comb the record, do counsel's work of organizing or make a party's arguments for it.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).  The Court will deny those portions of Olsen's Motion seeking summary judgment on Rao and Cheteni's First Amendment retaliation claims.

    **IT IS SO ORDERED.**

                              **BRUCE D. BLACK**
                              **CHIEF UNITED STATES DISTRICT JUDGE**