UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

YELENA BIRD, FREEDOM CHETENI,
 JOHN MORAROS and  SATYA RAO,

    Plaintiffs,

vs.            No. CIV 08-851 WJ/LAM

REGENTS OF NEW MEXICO STATE UNIVERSITY,
LARRY OLSEN, in his individual capacity,
JAMES ROBINSON, in his individual capacity,
MICHAEL MARTIN, in his individual capacity,
ROBERT GALLAGHER, in his individual capacity,
and MICHAEL ZIMMERMAN, in his individual capacity,

    Defendants.

<u>MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT ZIMMERMAN'S REVISED MOTION FOR SUMMARY JUDGMENT</u>

  **THIS MATTER** comes before the Court on Defendant Michael Zimmerman's Revised

Motion for Summary Judgment Based on Qualified Immunity (Doc. No. 414, filed October 18,

2011).  For the reasons stated below, the Motion is **GRANTED.**

**Background**

  Plaintiff Freedom Cheteni "filed an application for political asylum in 2006 with the United

States."  (Response at 3, Doc. No. 422, filed December 6, 2011).  In 2007, Defendant Michael

Zimmerman, the Registrar for New Mexico State University ("NMSU"), "granted Cheteni in-state

tuition based on his pending asylum petition." (*Id.*).  Cheteni "took classes in the [Master of Public

Health] program through December, 2008." ( *Id.* at 4).  During the first half of 2008, Cheteni "filed

charges of discrimination," "complained about discrimination" to NMSU administration, and "spoke

to members of the media."  (*Id.*).  "Cheteni applied to the Ph.D. program in Economics" in March,

2008. (*Id.* at 5). On his application to the Ph.D. program, Cheteni indicated his current visa status was "F-1 or student visa." (*Id.*). "In June of 2008, Cheteni filed a charge of discrimination with the EEOC complaining of race discrimination by NMSU and numerous high-level administrators." (*Id.*).

In the summer of 2008, "Cheteni's tuition status [was changed] to out-of-state." (*Id.* at 6). NMSU did not allow Cheteni to enroll for the Spring 2009 semester because "Cheteni owed money to NMSU for the out-of-state portion of his Fall 2008 tuition." (*Id.* at 8). "Cheteni filed an Emergency Petition for Preliminary Injunction with this Court to enroll in classes during the spring 2009 semester." "During the February 24, 2009 hearing, the Court negotiated a resolution to Cheteni's Petition whereby he was permitted until August of 2009 to provide additional proof that his asylum petition was pending in the summer of 2008 [and thus prove he was entitled to pay in-state tuition in the Fall 2008 semester]." (*Id.*).

In March 2009, NMSU "terminated Cheteni's status in the SEVIS[1] database, thereby rendering him 'out of status' for visa purposes." (Response at 8). "Zimmerman then wrote a letter to Immigration and Customs Enforcement ("ICE"), advising that Cheteni was not registered for the spring 2009 semester." (*Id.* at 9). "Cheteni was arrested by [ICE] on April 15, 2009 and incarcerated until September of 2009, awaiting deportation proceedings." (*Id.*).

Cheteni alleges that Zimmerman denied Cheteni in-state tuition and contacted ICE for discriminatory and retaliatory reasons in violation of 42 U.S.C. § 1981 and the First Amendment.

---

[1]Student and Exchange Visitor Information System. (*See* Motion at 6). SEVIS is a database "that tracks entry, stay, and exit of foreign students in the United States." (*Id.*).

(*See* Fourth Amended Complaint ¶¶ 92, 95, 158 and 167[2]).

**In-State Tuition**

Zimmerman seeks summary judgment on Cheteni's claim that Zimmerman discriminated and retaliated against Cheteni by not granting Cheteni in-state tuition rates. "When the qualified immunity inquiry turns on a subjective element, as it does when examining motive, the qualified immunity analysis is 'modified slightly.'" *McBeth v. Himes*, 598 F.3d 708, 724 (10th Cir. 2010) (applying slightly modified analysis to a First Amendment retaliation claim); *Lewis v. City of Ft. Collins*, 903 F.2d 752, 755 n.1, 758 (10th Cir. 1990) ("A § 1981 claim always requires purposeful discrimination"). "The defendant must do more than merely raise the [qualified] immunity defense; he must make a prima facie showing of the objective reasonableness of the challenged conduct." *McBeth v. Himes*, 598 F.3d at 724; *Hernandez v. Conde*, 2008 WL 867968 *7 (10th Cir.) (unpublished opinion) ("Prima facie evidence is evidence that will establish a fact or sustain a judgment unless contradictory evidence is produced"). "If the defendant makes this prima facie showing, the plaintiff must then produce specific evidence of the defendant's culpable state of mind to survive summary judgment." *McBeth v. Himes*, 598 F.3d at 724-725; *Lewis v. City of Ft. Collins*, 903 F.2d at 758 ("Once a showing of objective reasonableness is produced, the plaintiff may avoid summary judgment only by pointing to specific evidence that the official's actions were improperly motivated").

The State of New Mexico Higher Education Department has "establish[ed] a policy for the purpose of determining resident and nonresident tuition classifications for students enrolling at

---

[2]Paragraph 167 refers to First Amendment retaliation but does not mention Zimmerman's name. It does however refer to the "refusal to approve in-state tuition." Paragraph 92 alleges that Zimmerman "refused to qualify Cheteni for in-state tuition."

3

public postsecondary institutions in New Mexico." N.M.A.C. § 5.7.18.6 "A 'New Mexico resident for tuition purposes' means a person who is a United States citizen or has established permanent residence in the United States," has physically resided "in New Mexico for the twelve consecutive months immediately preceding the term for which the resident classification is requested," has signed "a written declaration of intent to relinquish residence in any other state and to establish it in New Mexico," and has performed certain overt acts "to evidence support of the written declaration of intent to establish permanent residency in New Mexico." N.M.A.C. §§ 5.7.18.7(I) and 5.7.18.9.

"'Nonresident' means a student who enters and remains in this state principally to enroll in postsecondary education, is presumed to continue to reside outside this state, and such presumption continues in effect until rebutted by clear and convincing evidence of bona fide residence." N.M.A.C. § 5.7.18.7(I). Alien students with an F-1 visa are nonresidents for tuition purposes. The Immigration and Naturalization Service grants an F-1 visa "to an alien who has a residence in a foreign country which he/she has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who entered the United States temporarily and solely for the purpose of pursuing such a course of study at an established institution of learning." 20 C.F.R. § 655.920.

The New Mexico Administrative Code requires that:

A person's residency classification for tuition purposes shall be determined *at time of admission* and must be completed by the census date of that first enrollment in a given public postsecondary educational institution. A person not meeting the residency requirements shall be classified as a nonresident for purposes of tuition charges. The student's classification at time of admission remains in effect *unless the individual is re-admitted* to the institution or until the individual petitions to become a New Mexico resident.

N.M.A.C. § 5.7.18.8(A) (*emphasis added*).

4

There are two cases where a nonresident will be assessed in-state tuition rates. One is that "Graduate assistants, including research and teaching assistants, [who are] employed at least one-fourth time (10 hours weekly), will be assessed in-state tuition rates. To be eligible, students (U.S. citizens and foreign nationals) must be enrolled full-time, as defined in the graduate catalogue of the public postsecondary institution, during regular terms." N.M.A.C. § 5.7.18.10(J). The other case includes students who have petitioned for asylum status to the United States. NMSU has afforded asylum petitioners with in-state tuition two or three times. (*See* Deposition of Michael R. Zimmerman at 82:15-83:19, Mem. in Support of Motion, Ex. N, Doc. No. 415-14, filed October 18, 2011). The decision whether to grant asylum petitioners in-state tuition is "based on professional judgment with interpretation of residency policies of the state of New Mexico" and on the "concept that [the asylum petitioners are] in the United States indefinitely." (*Id.*).

Cheteni entered the United States in 2002 on an F-1 visa and filed an application for political asylum in 2006. (*See* Response at 3). In 2007, NMSU Registrar Michael Zimmerman granted Cheteni in-state tuition based on his pending asylum petition after Cheteni provided Zimmerman with an "Acknowledgment of Application Receipt" from the Department of Homeland Security to confirm that Cheteni had filed an asylum petition. (*See id.*). Cheteni enrolled in the Master of Public Health ("MPH") program in August 2007 and took classes in the MPH program through December 2008. (*See id.* at 4).

In March 2008, Cheteni filed an Application for Admission to the Ph.D. program in Economics in NMSU's College of Business. (*See* Ex. B, Doc. No. 415-2, filed October 18, 2011). On his application, Cheteni indicated that he had an F-1 visa. (*See id.*). "At the time of application, admission or readmission, [NMSU] is obligated to take the information disclosed by the student and update the records based on that information." (Zimmerman Deposition at 90:9-91-10, Mem. in

Support, Ex. N); *see also* N.M.A.C. § 5.7.18.8(A) (A "student's [residency] classification at time of admission remains in effect *unless the individual is re-admitted* to the institution") (*emphasis added*).  Because Cheteni's application indicated he had an F-1 visa, NMSU's Graduate Admissions Office, not the Registrar's Office, changed his tuition rate from in-state to out-of-state.  (Zimmerman Deposition at 90:9-91:10, Mem. in Support, Ex. N).  Cheteni did not receive a graduate assistantship for the 2008-2009 academic year.  (*See* Ex. G).

After Cheteni inquired about the change in his tuition rate, Zimmerman responded by email on July 21, 2008, that the change resulted from the F-1 visa status Cheteni indicated on his application for admission to the Economics Ph.D. program and asked Cheteni to provide evidence that Cheteni is still on asylum status.  (*See* Ex. E).  Zimmerman's concern about whether Cheteni still qualified for in-state tuition was the status of Cheteni's asylum petition.  (Zimmerman Deposition at 94:6:-95:25).

Cheteni showed Zimmerman his I-589 Application Receipt from 2006 and a current work authorization card.  (*See id.*).  Zimmerman asked Jaspers whether the work authorization card Cheteni had submitted was sufficient to establish his asylum status.  (*See id.* at 99:23-24).  Zimmerman testified that Jaspers "said no, he should be able to provide evidence of a pending asylum status or evidence of permanent residency."  (*Id.* at 99:24-100:1).  On July 31, 2008, Mary Jaspers, the assistant director for NMSU's Office of Admissions, emailed Zimmerman stating that "The category on freedom Cheteni's Employment Authorization Card is (c)(8) which is employment based on '..an alien who has filed an application for asylum or withholding of deportation or removal.'  He should be able to provide you with a copy of his I-589, the Application for Political Asylum."  (Ex. 109 to Jasper Deposition, Ex. O).  On August, 1, 2008, Zimmerman sent a letter to Cheteni stating "I will need a copy of your I-589, *Application for Political Asylum* for your file,"

and reminding Cheteni that the residency deadline for Fall 2008 is September 3, 2008.  (Ex. J).

Zimmerman expected a new  or "current petition for asylum," "one dated recently."  (Zimmerman

Deposition 118:1-17, Response Ex. 27).  Cheteni did not submit any documentation that his asylum

petition was still pending.  (*See* Zimmerman Deposition at 98:5-10, Ex. N).

Cheteni argues that Zimmerman's request for a new asylum application receipt was not

objectively reasonable because a new receipt did not exist because Cheteni's original asylum

application was still pending.  (*See* Response at 10-11).  Zimmerman's initial request, on July 21,

2008, to Cheteni was general in nature asking for "evidence that you are still on asylum status."

(Response Ex. E).  Zimmerman later requested a copy of Cheteni's I-589, Application for Political

Asylum, on August 1, 2008, (*See* Mem. Ex. J), after the Assistant Director of the Office of

Admissions at NMSU informed Zimmerman, via an email dated July 31, 2008, that Cheteni "should

be able to provide you with a copy of his I-589, Application for Political Asylum."  (*See* Response

Ex. 22).  Zimmerman considered Jaspers to be "very knowledgeable of INS policies."  (Zimmerman

Deposition at 96:8-10, Response Ex. 2).

Cheteni also argues that Zimmerman's conduct was not objectively reasonable based on two

communications between Zimmerman and Mary Jaspers.  Regarding the first communication,

Zimmerman testified that Mary Jaspers advised him that "asylum status is not normally pending for

more than two years" and that Cheteni "should have either been granted permanent residency or

denied asylum status."  (Zimmerman Deposition at 95:18-22, Mem. Ex. N).  Cheteni suggests that

Zimmerman's belief that Cheteni's petition would have already been ruled on is not objectively

reasonable because Jaspers could not have advised Zimmerman that asylum status is not normally

pending for more than two years because Jaspers testified that she did not have any knowledge

regarding the length of time for asylum petition processing.  (*See* Response at 11; Response Ex. 25,

Jaspers Deposition at 16:4-21).  However, Zimmerman also testified that "political asylum status is determined in a relatively short period of time.  And that information can be found at the INS website.  They are not often granted for more than two years." (Zimmerman Deposition at 95:18-22, Mem. Ex. N; Zimmerman Deposition at 118:13-17, Response Ex. 27).  Thus, Zimmerman provided an objectively reasonable basis for his belief that Cheteni's initial asylum petition would have already been ruled on.

Regarding the second communication, Cheteni contends that Jaspers "inform[ed] Zimmerman that Cheteni's work authorization card indicated his asylum petition was current in the fall of 2008" but that Zimmerman ignored the information provided by Jaspers and continued to insist upon a new I-589 form.  (Response at 11).  Jaspers' email to Zimmerman did not "inform Zimmerman that Cheteni's work authorization card indicated his asylum petition was current in the fall of 2008." (Response at 11).  Her email stated "The category on Freedom Cheteni's Employment Authorization Card is (c)(8) which is employment based on "an alien who has filed an application for asylum or withholding of deportation or removal." (Response Ex. 22).  Her email continues with "He should be able to provide you with a copy of his I-589, the Application for Political Asylum." (*Id.*).  Zimmerman testified he was not familiar with codes on work authorization cards, that it would be possible for Cheteni to have a work authorization card if his asylum petition was no longer pending, and that many students on F-1 status have work authorization cards.  (Zimmerman Deposition at 98:20-99:12, Mem. Ex. N; Zimmerman Deposition at 117:7-23).

Zimmerman has made a prima facie showing of the objective reasonableness for denying Cheteni in-state tuition on the ground that Cheteni did not provide current evidence of the status of his asylum petition.  Cheteni had an F-1 visa which meant he was a non-resident for tuition purposes.  Cheteni did not have a graduate assistantship which meant the only way he would be

entitled to in-state tuition would be if he had a pending asylum petition or was granted asylum. Zimmerman asked Cheteni for evidence of his asylum status in 2008 and would not consider his asylum petition receipt from 2006 based on his belief that asylum petitions are generally ruled upon in less than two years.  Zimmerman testified that he relied on an INS website regarding the length of time asylum petitions remain pending and on advice from Jaspers, whom Zimmerman regarded as an expert on INS matters, that Cheteni should be able to provide an I-589 Application for Political Asylum.  Although Zimmerman may have been mistaken in thinking Cheteni would have a new I-589, Zimmerman's refusal to accept the 2006 I-589 and his request for a new I-589 are not objectively unreasonable. *See Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (*quoting Hunter v. Bryant*, 502 U.S. 224, 229(1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." (internal quotation marks omitted)).

With Zimmerman having made a prima facie showing of the objective reasonableness of his conduct, the burden shifts to Cheteni to produce specific evidence of Zimmerman's culpable state of mind.  Cheteni has produced no specific evidence that Zimmerman was substantially motivated by a desire to discriminate or retaliate against Cheteni.  While Cheteni has argued that Zimmerman's refusal to accept Cheteni's 2006 I-589 and work authorization card as proof of Cheteni's asylum status was not objectively reasonable and was pretextual, Cheteni has not explained how Zimmerman's actions constitute specific evidence that Zimmerman's actions were improperly motivated.  The Court will not comb the record or make a party's arguments for it.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).  The Court will grant Zimmerman's motion for summary judgment on Cheteni's discrimination and retaliation claims related to Zimmerman's decision to not grant Cheteni in-state tuition.

**Report to Immigration and Customs Enforcement**

Officer Marquez is an agent with Immigration and Customs Enforcement ("ICE").  (*See* Letter from Michael Zimmerman to Officer Marquez, dated march 26, 2009; Response Ex. 24, Doc. No. 422-6 at 9).  Mary Jaspers is the Assistant Director of the Office of Admissions at NMSU.  (*See* Deposition of Mary Jaspers at 4:6-16; Motion Ex. O, Doc. No. 515-15 at 2).  On March 25 or 26, 2009, Officer Marquez called Ms. Jaspers "requesting information on whether [Cheteni] was enrolled for the spring semester and requested a letter from the registrar."  (Jaspers Deposition at 21:2-22:9).  Officer Marquez indicated that "he had looked at his SEVIS record, and I [Jaspers] had not SEVIS registered [Cheteni] for the semester."  (*Id.*).  Ms. Jaspers had not updated Cheteni's SEVIS record prior to that time because "[Cheteni] was not registered for the semester."  (*Id.* at 22:18-20).  After speaking with Officer Marquez, Ms. Jaspers "requested the letter from Mike Zimmerman" "[b]ecause the ICE officer had requested that."  (*Id.* at 23:9-16).  The entire text of the letter reads:  "This is to verify that Mr. Freedom Cheteni is not currently enrolled at New Mexico State University for the  Spring 2009 semester.  If you have further questions, please feel free to give me a call at (575) 646-7526."  (Response Ex. 24).

Cheteni contends that Zimmerman's "conduct in communicating with Agent Marquez of Immigration and Customs Enforcement" was not objectively reasonable because "Zimmerman had never taken a similar action in his 27-year career as NMSU Registrar."  (Response at 12, 21-22). Cheteni does not dispute that Officer Marquez looked at the SEVIS record, saw that Cheteni was not registered, contacted Jaspers and requested a letter from Zimmerman.  Zimmerman points out that federal law requires NMSU to report "information as to the current registration of foreign students such as Mr. Cheteni."  (Motion at 6;  *see* 8 C.F.R. § 214.3(g)(2)(iii)("Each term or session and no later than 30 days after the deadline for registering for classes, schools are required to report

the following registration information: (A) whether the student has enrolled, dropped below a full course of study without prior authorization by the [designated school official], or failed to enroll")). Cheteni does not explain why verifying, at an ICE agent's request, information that the school is required by law to report is not objectively reasonable.

Cheteni also contends that Zimmerman's conduct "in cancelling Cheteni's status in the SEVIS database" was not objectively reasonable. (Response at 12). Cheteni argues that NMSU and Cheteni entered into an agreement which would allow him until August, 2009, to provide additional evidence of his asylum status and would "allow Cheteni to maintain his status until August 2009." (Response at 12-13). Cheteni states that the Immigration and Nationality Act requires institutions accepting foreign student enrollment to promptly report "the *termination* of attendance of each non-immigrant student," that Cheteni had not been "terminated" from NMSU, and that his enrollment had been deferred until the fall of 2009 to determine the amount of tuition he would be charged. (Response at 22 (*quoting* 8 U.S.C. § 1101(a)(15)(F)(i))). The provision quoted by Cheteni does use the word "termination" but only in a general sense while defining various classes of nonimmigrant aliens. *See* 8 U.S.C. § 1101(a)(15). The provision does not define "termination," nor does it indicate that termination is the only circumstance under which a school must report changes in a student's status. Cheteni makes the conclusory statement that 8 C.F.R. § 214.3 "which concerns individuals holding F or M visas who do not seek to become permanent residents of the United States . . . does not apply to [Cheteni.]" (Response at 2). Cheteni does not cite any provision in the federal regulations which provides that 8 C.F.R. § 214.3 does not apply to individuals with F-1 visas who are petitioning for asylum or would otherwise exempt NMSU from complying with the requirement to report whether Cheteni was enrolled. *See* 8 C.F.R. § 214.3(g)(2)(iii) (requiring school to report each term whether student has enrolled or failed to enroll). Finally, although

11

Cheteni asserts that Zimmerman "was integral to [terminating Cheteni's status in the SEVIS database]," (Response at 24), none of the portions of the record cited by Cheteni indicate that Zimmerman had any involvement with updating the SEVIS database.  Instead, the record shows that the assistant director of NMSU's Office of Admissions, Mary Jaspers, had not updated Cheteni's SEVIS record.

Zimmerman has made a prima facie showing of the objective reasonableness of verifying, at the ICE agent's request, whether Cheteni was enrolled.  Cheteni has not produced specific evidence that Zimmerman was substantially motivated to discriminate or retaliate against Cheteni. Accordingly, the Court grants Zimmerman's motion for summary judgment on Cheteni's discrimination and retaliation claims related to Cheteni's enrollment status in the SEVIS database and Zimmerman's verification letter to the ICE agent.

**SO ORDERED.**

_____

**UNITED STATES DISTRICT JUDGE**

12