IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YELENA BIRD, FREEDOM CHETENI,
JOHN MORAROS and SATYA RAO,

                Plaintiffs,

vs.                                                  No. CIV 08-851 WJ/RHS

REGENTS OF NEW MEXICO STATE UNIVERSITY,
LARRY OLSEN, in his individual capacity,
JAMES ROBINSON, in his individual capacity,
MICHAEL MARTIN, in his individual capacity,
ROBERT GALLAGHER, in his individual capacity, and
MICHAEL ZIMMERMAN, in his individual capacity,

                Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT GALLAGHER'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY**

**THIS MATTER** comes before the Court on the Motion for Summary Judgment by Robert Gallagher Based on Qualified Immunity (Doc. 451). For the reasons stated below, the Court grants the motion.

**BACKGROUND**

Yelena Bird ("Bird") is an African American female and was a faculty member at New Mexico State University ("NMSU"). (*See* Fourth Amended Complaint ¶ 1, at 1). Juan Moraros ("Moraros") is a Hispanic male and was a faculty member at NMSU. (*See* Fourth Amended Complaint ¶ 3, at 2). Robert Gallagher ("Gallagher") was a member of the Board of Regents of NMSU. (*See* Fourth Amended Complaint ¶ 9, at 2).

Bird and Moraros expressed opposition to discriminatory and retaliatory conduct towards them by other faculty members.  (*See* Fourth Amended Complaint ¶ 32, at 8).  "Starting in the fall of 2007 and continuing into 2008, both Bird and Moraros made numerous disclosures to the press regarding sex and race discrimination and retaliation at NMSU.  The information they disclosed to the press received substantial exposure in newspapers and radio broadcasts." (Fourth Amended Complaint ¶ 44, at 11).

Gallagher gave an interview to Ashley Meeks of the Las Cruces Sun News in May 2004.  (Response Ex. 1 at 73:4-7).  The Las Cruces Sun News published an article based on Gallagher's interview which states:

> Bob Gallagher alleges John Moraros and Yelena Bird were wrongfully hired in 2004, against faculty and department head recommendations; that a note in their files warned they would be likely to sue the university for discrimination; that they filed glowing evaluations of their supervisors just before being dismissed; and that they have refused to allow anyone to review their academic records . . . Separately, Moraros and Bird and Gallagher said they were surprised a disputed travel reimbursement from 2007 was not in their files.  The couple [Bird and Moraros] traveled to Seattle and separately submitted reimbursement forms.  Moraros said his was for himself, while Bird said she submitted one for herself and her husband.  The couple said they had not consulted with each other before submitting the duplicate request.  Gallagher said that constituted "fraud" and had they been tenured, it would have warranted a hearing.

(Response Ex. 12). Bird and Moraros claim that Gallagher made these statements in retaliation for Bird and Moraros publicly opposing discriminatory and retaliatory conduct at NMSU. (*See* Stipulation List of Plaintiffs' Claims, Doc. 443 at 3, 6).

In December, 2013, Plaintiffs Bird and Moraros, and Defendants Regents of NMSU stipulated that Bird's and Moraros' remaining pending claims against Defendant Gallagher are as follows:

[Bird and Moraros assert] First Amendment retaliation Section 1981 claims against Defendant Gallagher pursuant to 42 U.S.C. § 1983. [Bird and Moraros] publicly opposed conduct [they] believed to be on the basis of race and in retaliation Defendant Gallagher made public representations that were false, humiliating and damaging to [Bird and Moraros] to the effect that [they were] wrongfully and illegally hired at NMSU, [they] had a propensity to file baseless lawsuits, [they] did not have [] M.D. degree[s] and [were] professional fraud[s].
(Doc. 443 at 3, 6).

## LEGAL STANDARDS

Plaintiffs Bird and Moraros have asserted retaliation claims against Defendant Gallagher under 42 U.S.C. § 1981 and the First Amendment. To establish a prima facie case of retaliation under Section 1981, a plaintiff must show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Somoza v. University of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008). To prove a First Amendment retaliation claim, a plaintiff "must establish that (1) she was engaged in constitutionally protected activity, (2) the defendants' actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that protected activity, and (3) the defendant actions were substantially motivated as a response to her protected conduct." *McBeth v. Himes*, 598 F.3d 708, 724 (10th Cir. 2010).

Defendant Gallagher now moves for summary judgment based on qualified immunity. "When the qualified immunity inquiry turns on a subjective element, as it does when examining

motive, the qualified immunity analysis is 'modified slightly.'" *McBeth v. Himes*, 598 F.3d 708, 724 (10th Cir. 2010) (applying slightly modified analysis to a First Amendment retaliation claim). "The defendant must do more than merely raise the [qualified] immunity defense; he must make a prima facie showing of the objective reasonableness of the challenged conduct." *Id.*; *see also Hernandez v. Conde*, 2008 WL 867968 *7 (10th Cir.) (unpublished opinion) ("Prima facie evidence is evidence that will establish a fact or sustain a judgment unless contradictory evidence is produced"). "If the defendant makes this prima facie showing, the plaintiff must then produce specific evidence of the defendant's culpable state of mind to survive summary judgment." *Id.* at 724-725; *see also Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991) (qualified immunity procedure must be modified slightly when plaintiff's claim contains a subjective element, such as defendant's purpose, motive, or intent); *Lewis v. City of Ft. Collins*, 903 F.2d 752, 755 (10th Cir. 1990) (same).

## DISCUSSION

Gallagher's Memorandum in Support of his Motion for Summary Judgment does not discuss the "slightly modified' analysis applicable "when the qualified immunity inquiry turns on a subjective element, as it does when examining motive."[1] *McBeth v. Himes*, 598 F.3d at 724. Neither does Bird's and Moraros' Response. The Court has previously informed the parties that the "slightly modified" qualified immunity analysis applies to retaliation claims. (*See* Doc. 385 at 2, filed March 24, 2011; Doc. 409 at 10, filed September 7, 2011; Doc. 411 at 2-3, filed September 19, 2011; Doc.). The Court will apply the "slightly modified" qualified immunity analysis. *See Pueblo Neighborhood Health Centers v. Losavio*, 847 F.2d 642, 645 (10th Cir.

---

[1] Gallagher's Reply cites *McBeth v. Himes*, 598 F.3d 708, 724 (10th Cir. 2010) after stating that "Gallagher's comments were not motivated by an intent to retaliate." (Doc. 471 at 4, filed April 5, 2013).

1988) (reversing district court that applied the wrong standard in resolving the qualified immunity issue).

Gallagher has made a prima facie showing of the objective reasonableness for making statements to the press. Gallagher testified that part of his role a Regent of NMSU is "to promote the good and welfare of the university." (Response Ex. 1 at 8:21-22). One of Gallagher's roles as chairman of the Board of Regents was to act as a spokesperson for the Regents. (Response Ex. at 10:24-11:3). Gallagher was aware of the comments Bird and Moraros had made to the press regarding alleged discrimination and retaliation at NMSU and testified that he was concerned about the negative consequences of the press coverage on NMSU such as "people not supporting the university financially, parents deciding not to send their children to the university . . . [NMSU's] ability to be able to recruit faculty, and in this particular instance recruit minority faculty and staff because it specifically spoke to that issue." (Response Ex. 1 at 27:8-28:3). When asked why he gave an interview to Ashley Meeks of the Las Cruces Sun News, Gallagher testified that "Ms. Meeks called me and asked me about some comments that Moraros and Bird had made, and then asked me for a response to them." (Response Ex. 1 at 73:8-11). Gallagher testified that "we've allowed the university to be looked at in a negative light, in my mind, and we needed to have some balance." (Response Ex. 1 at 73:15-17). Gallagher also testified that the other Regents agreed that "we needed to make sure if we felt like the university was being dragged down and it could have negative consequences, that we needed to make sure that the information being disseminated is balanced information and not just from one side." (Response Ex. 1 at 85:9-22). Gallagher's testimony shows that he made the statements to the press because he and the other Regents were concerned about mitigating the negative consequences of the press coverage which up to that point was one-sided. The Court

concludes that this evidence constitutes a prima facie showing Gallagher acted objectively reasonable when he made those statements to the press.

With Gallagher having made a prima facia showing of the objective reasonableness of his conduct, the burden shifts to Bird and Moraros to produce specific evidence of Gallagher's culpable state of mind.  Bird and Moraros argue that the "evidence shows that Gallagher spoke out to the press about Bird and Moraros only after they publicly accused NMSU of discrimination and retaliation," and that "Gallagher admitted that it was because of their public comments that he spoke to the press."  (Response at 16-17).  However, Bird and Moraros have not produced any specific evidence that Gallagher was substantially motivated by a desire to retaliate against them.  Bird and Moraros also allege that "Gallagher relied solely on information from others in making these statements to the press and reviewed no documents," and dispute the truth of some of Gallagher's statements.  (Response ¶¶ 18-21, at 8).  Even if Gallagher relied solely on information from others, did not personally review the relevant documents and made incorrect statements, that does not show that his conduct was objectively unreasonable or that he was substantially motivated by a desire to retaliate against them.  *See Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (*quoting Hunter v. Bryant*, 502 U.S. 224, 229(1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." (internal quotation marks omitted)).  The Court concludes that Bird and Moraros have not presented any specific evidence demonstrating that Gallagher was substantially motivated by a desire to retaliate against Bird and Moraros.

The Court, therefore, grants Gallagher's motion for summary judgment based on qualified immunity because he has made a prima facie showing of the objective reasonableness

of his statements to the press and Bird and Moraros have not produced specific evidence of Gallagher's culpable state of mind.

**SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**