**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

YELENA BIRD, FREEDOM CHETENI,
JOHN MORAROS and SATYA RAO,

Plaintiffs,

vs.                                                                          No. CIV 08-851 WJ/RHS

REGENTS OF NEW MEXICO STATE UNIVERSITY,
LARRY OLSEN, in his individual capacity,
JAMES ROBINSON, in his individual capacity,
MICHAEL MARTIN, in his individual capacity,
ROBERT GALLAGHER, in his individual capacity, and
MICHAEL ZIMMERMAN, in his individual capacity,

Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT ON PLAINTIFF RAO'S PROMOTION CLAIM**

**THIS MATTER** comes before the Court on Defendants New Mexico State University and

Dr. James Robinson's Motion for Summary Judgment on Dr. Satya Rao's Claim for Promotion to

Full Professor (Doc. 447).  For the reasons stated below, the Court grants the motion.

**BACKGROUND**

In December, 2013, Plaintiff Rao and Defendants Regents of New Mexico State University

("NMSU") and James Robinson stipulated that Rao's remaining pending claims against NMSU are

as follows:

> Rao, a current faculty member at NMSU, brings claims of race discrimination and
> retaliation pursuant to Title VII, Section 1981 and NMHRA[1] against NMSU.  Rao
> was subjected to racially derogatory comments in front of other faculty members and
> a racist note was slipped under her office door;  Defendant Robinson told Rao that
> he would not support her for promotion to full professor despite the fact that she met

---

[1]New Mexico Human Rights Act.

> all the established criteria; Defendant Robinson gave Rao a retaliatory evaluation and
> excluded her from positions on administrative committees and other positions within
> the department and university; she was paid less than specified in her contract; she
> had been issued reprimands for conduct other faculty members routinely engage in;
> and she was wrongfully denied for promotion to full professor despite meeting all
> the criteria.

(Doc. 443).   They also stipulated that Rao's remaining pending claims against Robinson are as

follows:

> Rao brings claims of race discrimination and retaliation pursuant to Section 1981
> and 42 U.S.C. § 1983 against Defendant Robinson.   Robinson subjected Rao to
> racially derogatory comments in front of other faculty members, refused to support
> Rao's efforts to secure promotion to full professor despite the fact that she met all
> established criteria therefore; unfairly evaluated and reprimanded Rao; denied her
> teaching opportunities to which she was entitled; subjected her to monitoring that
> other faculty members were not subjected to; and excluded her from administrative
> committees and other positions within the department and university that would
> have aided her professional development.

(Doc. 443).

NMSU and Robinson filed two motions for summary judgment, one regarding Rao's

promotion claim (Doc. 447) and the other regarding her other claims (Doc. 449).   This

Memorandum Opinion and Order addresses the motion for summary judgment regarding Rao's

promotion claim.   The Court will address Rao's other claims against NMSU and Robinson in a

separate Memorandum Opinion and Order.

## LEGAL STANDARDS

Rao claims she was wrongfully denied a promotion to full professor because of racial

discrimination and retaliation.   Thus, the Court must consider two legal standards.

### Race Discrimination

When, as it is here, evidence of discrimination is circumstantial, rather than direct, a

plaintiff's discrimination claim is subject to the *McDonnell Douglas* burden-shifting framework.

*See Tabor v. Hilti*, 703 F.3d 1206, 1216 (10th Cir. 2013); *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1226 n.4 (10th Cir. 2000) (noting that the *McDonnell Douglas* burden-shifting analysis applies to discrimination claims brought pursuant to Title VII, § 1983, and § 1981); *Perry v. Woodward*, 199 F.3d 1126, 1142 (10th Cir. 1999) (applying *McDonnell Douglas* burden shifting analysis to racial discrimination claim brought pursuant to the New Mexico Human Rights Act).

Under *McDonnell Douglas*, a plaintiff carries the initial burden of establishing a prima facie case of discrimination.  To state a prima facie case of discrimination, "a plaintiff must demonstrate by a preponderance of the evidence that (1) she belongs to a protected class; (2) she applied for an available position for which she was qualified; (3) she was rejected under circumstances which give rise to an inference of unlawful discrimination."  *Tabor v. Hilti*, 703 F.3d at 1216.

If a plaintiff states a prima facie case, the burden shifts to the employer to proffer a legitimate non-discriminatory purpose for the adverse employment action.  *See Tabor v. Hilti*, 703 F.3d at 1216-1217.  If the employer makes this offering, the plaintiff will avoid summary judgment only if she shows [protected class status] was a determinative factor in the employment decision, or shows the employer's explanation for its action was merely pretext.  *See Tabor v. Hilti*, 703 F.3d at 1217.

**Retaliation**

A plaintiff's retaliation claim is also be subject to the *McDonnell Douglas* framework. Under this framework,  a plaintiff must first establish a prima facie case of retaliation by showing (1) she engaged in protected opposition to discrimination, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action.  *See Fye v. Oklahoma Corporation Commission*, 516 F.3d 1217, 1227 (10th Cir. 2008).  If the plaintiff makes the prima facie showing, the employer must proffer a legitimate,

nondiscriminatory reason for the adverse employment action.  The plaintiff then has the burden of demonstrating that the employer's asserted reasons for the adverse employment action are pretextual.

## DISCUSSION

The parties' stipulation as to Rao's remaining pending claims do not specify when NMSU wrongfully denied her promotion to full professor.  The parties' allegations refer to three separate instances where NMSU did not promote Rao.

## 2006 Application

The first instance of Rao not receiving a promotion does not appear to be part of Rao's remaining claims.  Defendants state that Rao applied for full professor in 2006, "but decided to not go forward beyond the initial stage, and withdrew her application, due in part to the initial vote by the Promotion and Tenure Committee, was 3-0 not to recommend promotion."  (Defendants' Memorandum of Law in Support of Motion for Summary Judgment on Dr. Satya Rao's Claim for Promotion to Full Professor ¶ 2 at 2) ("Memorandum").  Rao does not dispute Defendants' allegation regarding Rao's 2006 application.  Rao does not discuss the 2006 application and withdrawal in her Response and states that the "failure to promote Rao actually dates back to 2007." (Response at 14).  Rao does not allege any facts regarding discrimination or retaliation occurring until July or August of 2007 and later.  She thus does not allege any facts regarding discrimination or retaliation that would support a claim that NMSU wrongfully denied her promotion based on the 2006 application.  To the extent that Rao's claim asserts that NMSU wrongfully denied her promotion to full professor based upon her 2006 application, the Court grants Defendants' Motion.

**2007 "Application"**

Rao states that NMSU failed to promote her in 2007.  Rao asserts that she "intended to apply for promotion in 2007, but was dissuaded when Robinson informed her, falsely, that having an R01 grant [a major federal grant] was a requirement for promotion and that he would not support her for promotion without one."  (Response at 14).  Rao does not assert that NMSU's failure to promote her in 2007 was retaliatory.  Rao states that her "first documented protected activity [to support her retaliation claim] occurred in February 2008."  (Response at 15).

Rao alleges that "[w]hen Robinson refused to recommend her for promotion, Rao felt it would be futile to continue with her anticipated application that year."  (Response ¶ 12, at 4).  Rao contends that the "prima facie case for promotion is relaxed where there is evidence that applying for promotion would be futile."  (Response at 14).  Rao concludes that she "should have been promoted in 2007 and that a reasonable jury could find that her promotion denial was discriminatory."  (Response at 14).

"The futile gesture doctrine permits a plaintiff who has failed to apply for a position to establish a prima facie case by demonstrating that she would have applied but for accurate knowledge of an employer's discrimination and that she would have been discriminatorily rejected had she actually applied."  *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1228 (10th Cir. 2001).

Rao has not demonstrated that she would have applied but for accurate knowledge of an employer's discrimination.  Rao stated that "she advised Robinson that she would not continue with her application and believed that Robinson's refusal to support her promotion application was discriminatory."  (Response ¶ 12, at 4).  Rao believed Robinson's refusal to support her promotion application was discriminatory because: (1) Robinson had told Rao that she had to have an RO1 grant to get a promotion, and (2) two other professors, Mondragon and Arnold, did not have RO1

grants when they were promoted to full professor.  (*See* Response ¶¶ 9, 11, at 3-4).  These two alleged facts do not demonstrate Robinson's racial discrimination because Mondragon and Arnold were promoted to full professor in 2000 and 2001 while Robinson was not hired by NMSU until 2007.  (*See* Response ¶¶ 3, 7, at 2-3).  Rao alleges that "Robinson informed Rao that she was a 'smart Indian woman,'" but does not allege any other facts from which one could infer that Robinson's actions were racially discriminatory.  (*See* Response ¶ 8, at 3).

Robinson was not the only NMSU employee involved with the promotion process.  Rao acknowledges that her promotion is subject to the Promotion and Tenure ("P&T") Guidelines:

> Under the guidelines, a candidate's application for promotion goes first to a Departmental P&T Committee, which makes its recommendation to the Department Head.  The Department Head then makes a recommendation on promotion to the College Dean.  The Dean transmits the promotion dossier and all recommendations to the College P&T Committee, which makes a recommendation to the Dean.  The Dean then makes a recommendation to the NMSU Executive Vice President, who has the final say.

(Response ¶¶ 5-6, at 2-3).  Rao's description of the promotion process shows that there are many NMSU personnel involved in the process.  Rao does not identify any of the people involved in the promotion process described above in 2007, other than Robinson who was the Department Head at the time.  Nor does she allege any facts regarding discrimination by any of the other NMSU employees who would have been involved in the promotion process in 2007.

Finally, Rao has not demonstrated that she would have been discriminatorily rejected had she actually applied.  Rao states, without citation to any NMSU policy, "[i]t was critical for Rao to obtain a positive recommendation for promotion from Robinson, her Department Head." (Response ¶ 12, at 4).  However, she alleges no facts that her application would have been rejected without a positive recommendation by Robinson.  The promotion process Rao described shows that many people in addition to the Department Head make recommendations and the Executive Vice President

makes the final decision.

The Court grants summary judgment in favor of Defendants regarding Rao's claim that NMSU wrongfully denied her a promotion in 2007.

**2009 Application - Discrimination**

Rao alleges that NMSU wrongfully denied her 2009 promotion application for both discriminatory and retaliatory reasons.

Rao argues that she has made a prima facie demonstration that she was qualified to be promoted to full professor. Rao points out that she "was provided with a favorable recommendation (a vote of 4-1 by faculty members on the initial Departmental P&T Committee) that she go forward with her application for promotion." (Response at 13). She also points out that "Mary Hoke, the Department Head designee at the second step of the promotion process also agreed that Rao was qualified for promotion to full [professor]." (Response at 14). Finally, Rao contends that her "grant activity, participation in professional societies, and publications, the areas in which she was allegedly faulted by the promotion and tenure committees, are demonstrably superior to two of the faculty promoted to full professor in the Department (Mondragon and Arnold) and comparable to the qualifications of the faculty hired into the Department as full professor (Robinson)." (Response at 14).

The Court disagrees that the vote of 4-1 by faculty members on the initial Departmental P&T Committee demonstrates Rao was qualified for promotion to full professor. That initial evaluation did not conclude that Rao was qualified for promotion. (*See* Response Ex. 1-3). It only concluded that Rao was "read[y] to go forth with a full application in consideration of promotion to the rank of Professor." (Response Ex. 1-3). The evaluation was only a "preliminary review of [Rao's] academic accomplishments," which did not include a review Rao's entire promotion packet.

7

(Response ¶ 23, at 8; Ex. 1-3).  Professor Arnold forwarded the Committee's comments to Rao to assist her "in fine-tuning your promotion packet, in the interest of best highlighting your strengths and accomplishments, and perhaps addressing any weaknesses that the committee may have identified."  (Response Ex. 1-3).

The Court also disagrees that Mary Hoke's recommendation demonstrates Rao was qualified for promotion to full professor.  With respect to making a prima facie demonstration that a person was qualified in the context of tenure, a plaintiff

> need only show that he was sufficiently qualified to be among those persons from whom a selection, to some extent discretionary, would be made.  That is, he need show only that his qualifications were at least sufficient to place him in the middle group of tenure candidates as to whom both a decision granting tenure and a decision denying tenure could be justified as a reasonable exercise of discretion by the tenure-decision making body.
> . . .
>
> Whether a candidate is in the middle group for *prima facie* case purposes is not to be determined by whether he was in the middle group of those applicants whose credentials are in evidence.  Rather, the middle group is the group whose members' bids for advancement are debatable.

*Roebuck v. Drexel University*, 852 F.2d 715, 726 (3d Cir. 1988)(agreeing with *Banerjee v. Board of Trustees of Smith College*, 648 F.2d 61, 63 (1st Cir. 1981)).  The formal promotion process began with a unanimous recommendation from the three-member Departmental P&T Committee against promoting Rao to full professor.  (Response Ex. 1-4).  The second step was Department Head designee Mary Hoke's recommendation that Rao be promoted.  (Response Ex. 1-5).  The next step in the process was review by the six-member College P&T Committee which "believed Rao had insufficient numbers of publications."  (Response ¶ 28, at 9, Ex. 1-1).  The six-member College P&T Committee voted unanimously against Rao's promotion.  (*See* Doc. 248 at 5, filed June 14, 2010).  In the fourth step of the process, the Dean recommended against promoting Rao.  (Response ¶ 29,

at 9).  In the final step of the process, the Interim Executive Vice President denied Rao's promotion application.  (Response ¶ 30, at 10).  The persons in the NMSU promotion process were 11-1 against promoting Rao.  Consequently, Rao has not shown that her bid for promotion is debatable as reflected by the near unanimous vote against her promotion.

Rao's final argument that she is qualified for promotion overlaps with the third prong of the prima facie case analysis, whether non-members of the protected class were treated more favorably than her.  Rao argues that her "grant activity, participation in professional societies, and publications, the areas in which she was allegedly faulted by the promotion and tenure committees, are demonstrably superior to two of the faculty promoted to full professor in the Department (Mondragon and Arnold) and comparable to the qualifications of the faculty hired into the Department as full professor (Robinson)."  (Response at 14).

The Court disagrees with Rao's contention that the comparison with Mondragon, Arnold and Robinson shows she was qualified for promotion.  Rao acknowledges that her promotion application is governed by the P&T Guidelines and that while those guidelines "specify that promotion is based on a candidate's teaching, research and service, . . . no precise standards are set."  (Response ¶ 5, at 2).  Mondragon and Arnold were promoted to full professor in 2000 and 2001.  (Response ¶ 3, at 2).  The guidelines governing Rao's promotion application were issued in Fall 2001 and thus did not govern Mondragon's and Arnold's promotion applications.  (Response Ex. 1-1).  NMSU hired Robinson as the Department Head in 2007.  (Response ¶ 7, at 3).  Rao has not identified any NMSU policy governing the hiring of Department Heads.  Because Rao has not shown that the promotion criteria applicable to Mondragon, Arnold and Robinson were the same as or very similar to the criteria applicable to her, Rao's comparison has little, if any, value in showing that she was qualified for promotion to full professor.  Furthermore, the prima facie showing that non-members of the

protected class were treated more favorably than her can be satisfied by showing that others were promoted to full professor "in the department during a period *relatively near to the time* plaintiff was denied" a promotion.  *Roebuck v. Drexel University*, 852 F.2d 715, 726 (3d Cir. 1988).  NMSU denied Rao's promotion application in 2010, approximately a decade after NMSU promoted Mondragon and Arnold.

The Court grants summary judgment in favor of Defendants on Rao's claim that she was wrongfully denied a promotion to full professor because of racial discrimination, because Rao has not made a prima facie showing that she was qualified for promotion to full professor or that non-members were treated more favorably than her.

**2009 Application - Retaliation**

Rao has not offered evidence sufficient to establish a prima facie case of retaliation.  Rao contends, and Defendants do not dispute, that she engaged in protected activity when she filed three EEOC charges of discrimination, wrote a letter of complaint, and spoke out against discrimination at NMSU.  *See Hertz v. Luzzenac Am., Inc.,* 370 F.3d 1014, 1015 (10th Cir. 2004) ("Protected opposition can range from filing formal charges to voicing informal complaints to superiors").  Rao also contends, and Defendants do not dispute, that the denial of her promotion application was an adverse employment action.  *See Petersen v. Utah Dep't of Corrections*, 301 F.3d 1182, 1190 (10th Cir. 2002) ("Failure to promote would be a materially adverse employment action").  Rao has not, however, presented evidence sufficient to establish a causal connection between her complaints and the denial of her promotion application.

"A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive...." *MacKenzie v. City and Cnty. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005)  The requisite causal connection may be shown by "evidence of

10

circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013). If the adverse action occurs three months or more from the protected activity, then the action's timing alone will not be sufficient to establish the causation element. *Id.* Where the very close temporal proximity between the protected activity and the retaliatory conduct is lacking, the plaintiff must offer additional evidence to establish causation. *Id.*

Very close temporal proximity between Rao's latest complaint and the denial of her promotion application is not, by itself, sufficient to justify an inference of retaliatory motive. The latest incident of Rao's protected activity identified in her Response is an EEOC charge that she filed on May 19, 2009. (*See* Response ¶ 15 at 5, 15). Rao did not submit her complete promotion application until November 13, 2009, which is approximately six months after her latest EEOC charge. Consequently, the denial of her promotion application occurred well beyond the three-month period required to show causal connection by temporal proximity alone. Rao must offer additional evidence to establish causation.

Rao offer three sorts of evidence to establish causation. First, Rao alleges that the then-interim Department Head Stephen Arnold told Rao that "things would go better for her in the department if she withdrew her complaints." (Response at 16). This allegation is not evidence of causation with respect to the denial of Rao's promotion because, as Rao admits, Arnold was removed from the promotion process. (*See* Response at 16-17).

Second, Rao alleges that Robinson and Arnold took the following adverse actions against her that "negatively affected her ability to secure promotion: (1) Robinson reneged on a promise to make her Chair of the MPH Orientation Committee; (2) Rao "was removed from a faculty search committee;" (3) Rao "was shorted on her pay for teaching a summer course," which was rectified

11

two months later; and (4) Rao "was denied the opportunity to serve on several committees, as faculty advisor for a student group and as coordinator for a joint degree program." (Response at 17). Rao admits that the Executive Vice President who denied her promotion did so because he "thought Rao's grant activity was deficient, he expected to see more responsibility in the professional societies and he expected more publications." (Response ¶ 30 at 10). Rao does not explain how service on those NMSU committees would have overcome the deficiencies the Executive Vice President identified as the bases for denying her promotion application, i.e. her grant activity, her responsibility in professional societies and her publications.

Third, Rao contends she "was treated substantially differently in the promotion process than Mondragon, Arnold and Robinson." (Response at 18). As discussed above, Mondragon and Arnold were promoted approximately a decade before Rao applied for promotion. NMSU adopted new promotion guidelines after Mondragon and Arnold were promoted and before Rao applied for promotion. Robinson was hired as a Department Head; he was not promoted to full professor. Rao has not identified the qualifications requirements in place when Mondragon and Arnold were promoted, and has not identified the hiring requirements in place when Robinson was hired. Consequently, Rao's differential treatment during the promotion process is not evidence that justifies an inference of retaliatory motive. Rao has not established a prima facie case of retaliation because she has not showed there is a causal connection between the protected activity and the adverse employment action.

Even if Rao satisfied her burden to establish a prima facie case of retaliation, NMSU has proffered a legitimate, nondiscriminatory reason for denying her promotion. "Establishing a legitimate, nondiscriminatory reason is a burden of production and can involve no credibility assessment." *Fye v. Oklahoma Corporation Commission*, 516 F.3d 1217, 1228 (10th Cir. 2008).

Jay Jordan, NMSU's Executive Vice President, made an independent decision to deny Rao's promotion based on his review of Rao's promotion portfolio and recommendations received from the Department Promotion and Tenure Committee, the Department Head, the College Promotion and Tenure Committee and the College Dean.  (Affidavit of Jay Jordan, Ph.D., Doc. 248, filed June 14, 2010).  Jordan determined that Rao's "material was not of the quality I expect from candidates seeking promotion to full professor.  There was not demonstrated leadership nor adequate research and scholarly activity." (Jordan Affidavit at 2).  Jordan also concurred with the recommendations he received which indicated Rao must increase the number of publications, develop a focused research program to build national recognition and obtain more grant funding.  (Jordan Affidavit at 3, 5)(attaching the recommendations from the Department Promotion and Tenure Committee and the College Promotion and Tenure Committee). These are legitimate, nondiscriminatory reasons for denying Rao's promotion application which shifts the burden to Rao to demonstrate that this proffered explanation is a pretext for retaliation.

To show pretext, Rao "must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fye v. Oklahoma Corporation Commission*, 516 F.3d 1217, 1228 (10th Cir. 2008).   Rao argues that NMSU's proffered reason for denying her promotion is pretextual based on: (1) a comparison of Rao's grant and publication record with those of Mondragon, Arnold and Robinson; (2) procedural irregularities in the promotion process; (3) the lack of any consistent standard governing eligibility for promotion; and (4) other record evidence.

The Court has already determined that comparison of Rao's qualifications to those of

Mondragon, Arnold and Robinson is not useful. Mondragon and Arnold were promoted approximately a decade before Rao applied for promotion. NMSU adopted new promotion guidelines after Mondragon and Arnold were promoted. Robinson was not promoted to full professor but instead was hired as the Department Head. Rao has not shown that the promotion requirements in place when Mondragon and Arnold were promoted, or the Department Head requirements when Robinson was hired, are equivalent to the promotion requirements in place when Rao applied for promotion.

As for procedural irregularities in the promotion process, Rao notes that Arnold was removed from the process which "could have caused [others in the promotion process] to conclude that Rao should not be promoted despite her superior qualifications." (Response at 22). There were 12 persons involved with the promotion process who agreed 11-1 that Rao should not be promoted. Rao cites no testimony or other evidence that the 11 who thought Rao should not be promoted were influenced by Arnold's removal from the promotion process. Rao also argues that five of the six members on the College Promotion and Tenure Committee were not members of Rao's college and that "[t]here can be no question that different standards apply to promotion in different areas of scholarly activity." (Response at 22). Rao only cites evidence regarding one standard: the number of publications. (Response at 9). Rao presents the testimony of one member of the College P&T Committee who testified that regarding the number of publications "every college has its own expectations." (Response at 9). Rao admits that the Guidelines governing her promotion application do not set a required number of publications. Rao does not cite any evidence that the five members of the College P&T Committee from other colleges had an expectation of a higher number of publications than Rao's college. Rao also does not explain why the one member on the College P&T Committee who was from Rao's college also concurred that Rao's publication "productivity

during this period is below what one would like to see" and voted against Rao's promotion. (Doc. 248 at 4).

Rao argues that the lack of any consistent standard governing eligibility for promotion points to pretext. Rao states the lack of a definite number of publications required for promotion "points up the lack of any consistent standard applicable to promotion." (Response at 23). Rao also contends that each person involved in the promotion process "applied his or her own arbitrary personal standard," and concludes that "the review of Rao's promotion application was entirely subjective" and establishes pretext. (Response at 23). The Court disagrees.

"Although the presence of subjective decision-making can create a strong inference of discrimination, the use of subjective considerations by employers is not unlawful per se." *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1145 (10th Cir. 2009). The Tenth Circuit has "consistently recognized that such criteria must play some role in certain management decisions and accordingly [has] reviewed the use of subjective factors on a case-by-case basis." *Id.* Courts "typically infer pretext . . . only when the criteria on which the employers ultimately rely are *entirely subjective* in nature." *Id.* (*emphasis in original*) (stating that "competencies cannot be considered wholly subjective . . . merely because they cannot be precisely quantified."); *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217-1218 (10th Cir. 2002) (finding evidence of pretext where a system ranking employees from best to worst had no set of objective criteria by which employees are differentiated). NMSU's promotion guidelines list specific evidence that may be considered regarding a promotion applicant's qualifications for teaching,[2] research and creative endeavors,[3] and

---

[2]Suggested evidence to document the quality of teaching includes: (1) conducting classes, seminars, meetings, workshops, and consultations; (2) developing and preparing educational materials, course syllabi, interactive courses for distance education, self-instructional programs, (3) developing curriculum improvements and changes; (4) evaluating student performance in classroom

service.[4]  (*See* Doc. 459-1).  Although NMSU's promotion guidelines do not set precise, quantified criteria, they are not entirely subjective because they identify specific types of evidence to consider when determining whether an applicant is qualified for promotion.

Rao also contends that other record evidence, when considered with the comparison of the qualifications of Mondragon and Arnold, the procedural irregularities, and the lack of consistent standards, "strongly supports a finding of pretext."  (Response at 24).  That other record evidence includes the following:  (1) Rao is the longest-serving and lowest paid associate professor in the Department; (2) Rao has been subjected to demeaning comments about her race by others in the Department; (3) Rao has been removed from and denied membership on NMSU committees; (4) Rao has received less income for teaching summer classes than initially agreed upon; and (5) Rao has received fewer opportunities than her non-minority colleagues to teach overload courses, resulting in reduced income.  (*See* Response at 24).  Rao makes the bald assertion that this other

---

and non-classroom settings; (5) engaging in teaching improvement activities; (6) advising; (7) supervising students in clinical, and/or field settings; (8) supervising students' theses, chairing, and serving on graduate orals committees; and (9) developing new field sites/clinical settings.

[3]Suggested evidence to document research and creative endeavors includes: (1) developing funded research proposals and research grants; (2) publishing books, reviews, and/or articles in refereed and non-refereed professional journals; (3) creating media forms such as films, videotapes, slide presentations and software; and (4) presenting papers at professional/academic meetings and conferences.

[4]Suggested evidence to document quality of service includes: (1) student activities including recruitment, sponsoring student organizations and facilitating student group interaction; (2) committee participation at departmental, college, and university level; (3) interdepartmental collaboration; (4) program planning and development; (5) keeping records and preparing minutes; (6) assigning faculty course loads; (7) preparing budgets; (8) interviewing candidates for faculty positions; (9) involvement in professional meetings, seminars, and workshops as an organizer, panel chair, discussant, etc.; (10) serving as an elected officer of a professional organization; (11) proving professional consultation; (12) performing as a professional in community activities; (13) writing funded proposals for training of professionals; and (14) editing a journal and/or manuscripts.

16

record evidence supports a finding of pretext but offers no explanation how this other record evidence constitutes weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in NMSU's proffered legitimate reasons for denying Rao's promotion application.

Rao has not shown that NMSU's proffered explanation for denying her promotion application is pretext. The Court has reviewed the totality of the evidence cited by Rao. Some of the evidence cited by Rao is not supported by citations to the record, such as her contention that personnel in the promotion process could have been influenced by Arnold's removal from the process. Rao incorrectly construes other evidence, such as when she characterizes the promotion guidelines as being entirely subjective when the guidelines set forth many criteria to be considered. Other evidence cited by Rao is either not in the record or irrelevant, such as the promotion criteria in place when Mondragon and Arnold were promoted and the hiring criteria when Robinson was hired as Department Head. Rao cites other record evidence but does not explain how it shows pretext.

The Court grants summary judgment in favor of Defendants on Rao's claim that she was wrongfully denied a promotion to full professor because of retaliation, because Defendants have proffered a legitimate, nondiscriminatory reason for denying her promotion and Rao has not shown that Defendants' proffered explanation is a pretext for retaliation.

**IT IS ORDERED** that Defendants New Mexico State University and Dr. James Robinson's Motion for Summary Judgment on Dr. Satya Rao's Claim for Promotion to Full Professor (Doc. 447) is hereby GRANTED.

_____
**UNITED STATES DISTRICT JUDGE**

17