IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YELENA BIRD, FREEDOM CHETENI,
JOHN MORAROS and SATYA RAO,


                  Plaintiffs,

vs.                                                            No. CIV 08-851 WJ/RHS

REGENTS OF NEW MEXICO STATE UNIVERSITY,
LARRY OLSEN, in his individual capacity,
JAMES ROBINSON, in his individual capacity,
MICHAEL MARTIN, in his individual capacity,
ROBERT GALLAGHER, in his individual capacity, and
MICHAEL ZIMMERMAN, in his individual capacity,

                  Defendants.


**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT ON PLAINTIFF RAO'S CLAIMS UNDER
42 U.S.C. §§ 1981 AND 1983, TITLE VII AND
THE NEW MEXICO HUMAN RIGHTS ACT**

**THIS MATTER** comes before the Court on Defendants New Mexico State University and Dr. James Robinson's Motion for Summary Judgment on Dr. Satya Rao's Claims Under 42 U.S.C. §§ 1981 and 1983, Title VII and the New Mexico Human Rights Act (Doc. 449). For the reasons stated below, the Court grants the motion.

### BACKGROUND

In December, 2013, Plaintiff Rao and Defendants Regents of New Mexico State University ("NMSU") and James Robinson stipulated that Rao's remaining pending claims against NMSU are as follows:

Rao, a current faculty member at NMSU, brings claims of race discrimination and

> retaliation pursuant to Title VII, Section 1981 and NMHRA[1] against NMSU. Rao was subjected to racially derogatory comments in front of other faculty members and a racist note was slipped under her office door; Defendant Robinson told Rao that he would not support her for promotion to full professor despite the fact that she met all the established criteria; Defendant Robinson gave Rao a retaliatory evaluation and excluded her from positions on administrative committees and other positions within the department and university; she was paid less than specified in her contract; she had been issued reprimands for conduct other faculty members routinely engage in; and she was wrongfully denied for promotion to full professor despite meeting all the criteria.

(Doc. 443) ("Stipulation"). They also stipulated that Rao's remaining pending claims against Robinson are as follows:

> Rao brings claims of race discrimination and retaliation pursuant to Section 1981 and 42 U.S.C. § 1983 against Defendant Robinson. Robinson subjected Rao to racially derogatory comments in front of other faculty members, refused to support Rao's efforts to secure promotion to full professor despite the fact that she met all established criteria therefore; unfairly evaluated and reprimanded Rao; denied her teaching opportunities to which she was entitled; subjected her to monitoring that other faculty members were not subjected to; and excluded her from administrative committees and other positions within the department and university that would have aided her professional development.

(Doc. 443).

NMSU and Robinson filed two motions for summary judgment, one regarding Rao's promotion claim (Doc. 447) and the other regarding her other claims (Doc. 449). This Memorandum Opinion and Order addresses Rao's other claims against NMSU and Robinson. The Court has addressed Rao's promotion claim in the separate Memorandum Opinion and Order Granting Defendants' Motion for Summary Judgment on Plaintiff Rao's Promotion Claim (Doc.484).

## LEGAL STANDARDS

Rao claims she was wrongfully denied a promotion to full professor because of racial

---

[1] New Mexico Human Rights Act.

discrimination and retaliation. Thus, the Court must consider two legal standards.

**Race Discrimination**

When, as it is here, evidence of discrimination is circumstantial, rather than direct, a plaintiff's discrimination claim is subject to the *McDonnell Douglas* burden-shifting framework. *See Tabor v. Hilti*, 703 F.3d 1206, 1216 (10th Cir. 2013); *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1226 n.4 (10th Cir. 2000) (noting that the *McDonnell Douglas* burden-shifting analysis applies to discrimination claims brought pursuant to Title VII, § 1983, and § 1981); *Perry v. Woodward*, 199 F.3d 1126, 1142 (10th Cir. 1999) (applying *McDonnell Douglas* burden shifting analysis to racial discrimination claim brought pursuant to the New Mexico Human Rights Act). "In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII." *Carney v. City and County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008).

Under *McDonnell Douglas*, a plaintiff carries the initial burden of establishing a prima facie case of discrimination. To state a prima facie case of discrimination, a plaintiff "must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees." *Carney v. City and County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008).

If a plaintiff states a prima facie case, the burden shifts to the employer to proffer a legitimate non-discriminatory purpose for the adverse employment action. *See Tabor vi. Hilti*, 703 F.3d 1206, 1216-1217 (10th Cir. 2013). If the employer makes this offering, the plaintiff will avoid summary judgment only if she shows [protected class status] was a determinative factor in the employment decision, or shows the employer's explanation for its action was merely pretext. *See Tabor v. Hilti*, 703 F.3d 1206, 1217 (10th Cir. 2013).

**Retaliation**

A plaintiff's retaliation claim is also be subject to the *McDonnell Douglas* framework. Under this framework, a plaintiff must first establish a prima facie case of retaliation by showing (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action. *See Fye v. Oklahoma Corporation Commission*, 516 F.3d 1217, 1227 (10th Cir. 2008). If the plaintiff makes the prima facie showing, the employer must proffer a legitimate, nondiscriminatory reason for the adverse employment action. The plaintiff then has the burden of demonstrating that the employer's asserted reasons for the adverse employment action are pretextual.

## DISCUSSION

The parties' stipulation as to Rao's remaining pending claims specify the following as the bases for her discrimination and retaliation claims: (1) derogatory comments; (2) exclusion from committees; (3) an anonymous, racist note; (4) an unfair and retaliatory evaluation; (5) improper reprimands; (6) reduced summer pay; and (7) decreased teaching load. Rao contends that "[r]ather than considering each alleged act discretely, the Court must consider all of the alleged acts together to determine whether, in the aggregate, they adversely affected the terms, conditions or privileges of her employment." (Response at 9-10). The Court will consider all of the alleged acts together after discussing each act individually.

**Derogatory Comments and Committee Positions**

Rao alleges that she was "subjected to racially derogatory comments in front of other faculty members." (Stipulation at 6-7). Rao met with Robinson during the summer of 2007, shortly after NMSU hired Robinson as the Department Head, to review her CV. (*See* Response ¶ 3, at 2). "At their first meeting, Robinson informed Rao that she was a 'smart Indian woman" but that she didn't

4

'know how to put a CV together.'" (Response ¶ 3, at 2). Michael Young, a Department administrator, "advised Rao that she was 'not really a minority' because she was 'educated.'" (Response ¶ 8.a, at 3). Rao "was informed by [others at NMSU] that Larry Olsen, then-Associate Dean . . . had, on more than one occasion, referred to her in conversation as a 'black bag lady' or as a 'black homeless lady wandering the streets.'" (Response ¶ 8.b, at 3). In January 2008, "Young asked Rao, 'Are you considered black, or what?'" and after Rao "stated later during the same conversation that for a long time there had been few minorities in the Department, Young said that now there were 'a lot of you people [meaning persons of Indian ethnicity] and Negro people' in the Department." (Response ¶ 8.c, at 3-4). In April 2008, Rao found an unsigned note, which had been slipped under her office door, which stated "fake n***er shut the f**k up if you want to stay at NMSU or else." (Response ¶ 8.d, at 4).

Rao also alleges that Robinson "excluded her from positions on administrative committees and other positions within the department and university . . . that would have aided her professional development." (Stipulation at 6-7). Rao alleges five instances where she was excluded from such positions. The first instance allegedly occurred in January 2008 when Rao advised Robinson that she was willing to serve as Chair of the MPH Orientation Committee. (Response ¶ 18, at 5). Robinson advised Rao that he would allow her to serve as committee chair, but never appointed her to the position. (Response ¶ 18, at 5). The second occurred in September of 2008 after the interim Department Head Stephen Arnold asked faculty to volunteer for open committee positions. (Response ¶ 19, at 6). Rao advised Arnold of her interest in serving on the faculty search committee,[2] which had an opening, but Arnold informed Rao that only full professors would be

---

[2]In her Additional Material Fact 19, Rao refers to the committee as "the faculty search committee." She cites to her Declaration which, at paragraph 25, identifies the committee as "the

allowed to serve on that particular committee, although Rao, as an Associate Professor, had previously been allowed to serve on committees of that type. (Response ¶ 19, at 6). The third also occurred in September 2008 when Rao alleges she was informed by several members of the Masters of Public Health Student Organization that the group wanted to select her as its Faculty Advisor. (Response ¶ 20, at 6). Arnold informed the group they were not allowed to choose Rao as advisor and appointed a white faculty member as the advisor. (Response ¶ 20, at 6). The fourth occurred in 2007 when Arnold created the position of Masters of Public Health/Masters of Social Work coordinator/liaison and, despite Rao's previous work with the program, appointed a more junior faculty member. (Response ¶ 21, at 6). The fifth occurred after Rao, who had prior experience with the online MPH program, was told she would be the co-coordinator of the online program. (Response ¶ 22, at 7). Robinson revoked the offer and a more junior faculty member was given the position. (Response ¶ 22, at 7).

Rao argues that the alleged derogatory comments and exclusion from committees are adverse employment actions. She alleges that "Robinson's comments have negatively impacted her [employment] status" because Robinson "dissuaded [Rao] from applying for promotion" and "preventing an employee from receiving a promotion constitutes an adverse employment action." (Response at 11). She also alleges that she was "deprived of numerous service opportunities [on committees] . . . which was one of the areas [NMSU] relied on in later denying Rao promotion to full professor." (Response at 12).

Rao has not made a prima facie showing of adverse employment action based on the alleged derogatory comments and exclusion from committees. "A tangible employment action constitutes

---

department P & T [Promotion and Tenure] committee."

a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Aquilino v. University of Kansas*, 268 F.3d 930, 934 (10th Cir. 2001) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "Speculative harm does not constitute adverse employment action." *Aquilino v. University of Kansas*, 268 F.3d 930, 936 (10th Cir. 2001). "[U]nnecessary derogatory comments are not in themselves materially adverse employment actions." *Wells v. Colorado Dept. of Transp.*, 325 F.3d 1205, 1214 (10th Cir. 2003) (indicating that derogatory comments along with a loss of authority that is prolonged or severe enough may constitute a materially adverse reduction in job responsibilities).

The Court has reviewed the cited portions of the record regarding the alleged derogatory comments. *See Fowler v. United States*, 647 F.3d 1232, 1237 (10th Cir. 2011) (When determining whether summary judgment is appropriate, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party"). While the comments which Rao alleges she was subjected to were offensive, they are not, by themselves, sufficiently severe or pervasive to alter the conditions of Rao's employment. *See Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675, 680 (10th Cir. 2007). ("A plaintiff does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments."). Rao has not offered any evidence that there was any prolonged or severe reduction in her job responsibilities or adverse change in any other aspect of her employment resulting as a consequence of those comments. Instead, Rao argues those comments "dissuaded" her from applying for promotion in 2007 and asserts that the dissuasion is equivalent to being denied a promotion. To determine that the derogatory comments were an adverse employment action, the Court would have to speculate

7

that Rao would have been promoted had she applied.  Rao presents no evidence that she would have been promoted had she applied in 2007.  On the contrary, record evidence cited by Rao shows that she was not promoted in 2009 for a variety of reasons.  (*See* Rao's Response to the Motion for Summary Judgment regarding the denial of her promotion, Ex. 1-4, Doc. 459-2, filed March 4, 2013 (indicating that to be promoted, Rao need to increase her "level of depth in terms of professional services, establishment of leadership at the university and national level, research and grantsmanship productivity . . . [by] chairing committees for state and national organizations, and more recent membership in university wide committees [and] increas[ing] her grantsmanship by actively applying for competitive research grants.")); *see also* Affidavit of Jay Jordan, Executive Vice President, Doc. 248, filed June 14, 2010 (stating he made an independent decision to deny Rao's promotion application because her promotion portfolio "was not of the quality I expect from candidates seeking promotion to full professor," that there "was not demonstrated leadership nor adequate research and scholarly activity," and concurring with the recommendations that stated concerns that she did not have sufficient publication productivity and whether her research was such as "to build national recognition for her and for her to clearly establish leadership in a given discipline and attract grant funding").

With regard to the alleged exclusion from committees, Rao presents no evidence that she would have been promoted had she served on those committees.  As noted above, NMSU denied Rao's promotion application because she had not established leadership at the national level and had not been sufficiently productive in research and grantsmanship.  Serving on the five committees identified by Rao would not have remedied her other deficiencies in national leadership, research and grantsmanship.  In addition, although Rao contends that service on committees was one basis for the denial of her promotion application, the Promotion and Tenure Committee report suggested

8

that to demonstrate qualities warranting promotion, Rao should have "more recent membership in *university wide* committees." (Ex. 1-4, Doc. 459-2) (*emphasis added*). All of the committees that Rao asserts she was excluded from appear to be departmental committees related to the Masters of Public Health program and thus would not satisfy the requirement for "more recent membership in *university wide* committees." Rao's assertion that being excluded from the five committees is an adverse employment action rests on her unsupported belief that she would have been promoted had she served on those committees. "Speculative harm does not constitute adverse employment action." *Aquilino v. University of Kansas*, 268 F.3d 930, 936 (10th Cir. 2001).

**Anonymous Note**

Rao alleges that a racist note was slipped under her office door. (Stipulation at 6). In April 2008, Rao found an unsigned note, which had been slid under her office door, which stated "fake n\*\*\*er shut the f\*\*k up if you want to stay at NMSU or else." (Response ¶ 8.d, at 4). Rao alleges that "[a]lthough this incident was well-publicized on campus, neither the Department, the College, nor the University issued any statements condemning the notes or indicating that discrimination based on race would not be tolerated." (Response ¶ 8.d, at 4). Rao states "while the incident itself may not be attributable to NMSU under § 1981; such liability is not similarly relieved under Title VII." (Response at 19). Rao cites *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1244 (10th Cir. 2001) for the proposition "liability is construed against the employer where the employer fails to remedy or prevent a hostile or offensive work environment of which management-level employees know or should have known of the situation." (Response at 19).

*Turnbull* was a psychologist employed at a state mental hospital who sued the hospital and the state under Title VII for sexual harassment after she was sexually assaulted by a patient. "To protect against imposing strict liability upon employers [for the acts of nonemployees], we apply

a negligence analysis, asking whether the organization failed to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *Turnbull*, 255 F.3d at 1244. The Tenth Circuit divides the negligence analysis "into two separate inquiries, looking first, into the employer's actual or constructive knowledge of harassment, and second, into the adequacy of the employer's remedial and preventive responses." *Turnbull*, 255 F.3d at 1244-1245 (stating that it "is not always possible for an employer to completely eliminate offensive behavior, and thus the effectiveness inquiry looks not to whether offensive behavior actually ceased but to whether the remedial and preventative action was reasonably calculated to end the harassment").

The Court disagrees with Rao's construction of *Turnbull*. Rao contends that NMSU is liable under the *Turnbull* analysis because NMSU did not remedy or prevent an offensive work environment *after* Rao received the racist note. The facts and context in *Turnbull* make clear that an employer may be liable for a nonemployee's acts if the employer knew of the hostile or offensive work environment, fails to remedy or prevent such an environment, and a person is subsequently subjected to offensive behavior by a nonemployee. Nothing in *Turnbull* suggests that an employer may be liable for an offensive act by not responding *after* the offensive act in question, in this case the racist note. Rao does not cite any evidence that NMSU should have known of the risk of racist notes being put under office doors. Rao suggestion that NMSU should have "reiterat[ed] the University's no tolerance policy against discrimination and retaliation" indicates NMSU apparently had taken some measures to alleviate known or obvious risks before Rao received the racist note. (Response at 19).

**Unfair/Retaliatory Evaluation and Improper Reprimands**

Rao stipulated that two of the bases for her remaining discrimination and retaliation claims

are: (1) Robinson "unfairly evaluated" her and gave her a "retaliatory evaluation;" and (2) "she had been issued reprimands for conduct other faculty members routinely engage in." (Stipulation at 6-7). In the Fourth Amended Complaint, Rao alleged:

> Also in 2008 Robinson conducted an evaluation of Rao's performance despite the fact that Rao had previously made complaints about Robinson's discriminatory treatment of her. Further, by the time he evaluated Rao, Robinson had allegedly stepped down from performing administrative responsibilities, such as performance evaluations. Robinson's evaluation of Rao was deliberately dismissive of her work through 2007 and omitted key parts of her work so as to artificially depress Rao's score.

(Doc. 348 ¶ 108, at 27). Rao also alleged that in February 2008, "Robinson reprimanded Rao for her alleged failure to be 'engaged enough in the department' [and] that "on several occasions, [Robinson] had gone to Rao's office and did not find her there [when] she was expected to be at her desk at all times during weekdays or let office staff know where she was." (Fourth Amended Complaint ¶ 106, at 26).

Rao appears to have abandoned the evaluation and reprimands as bases for her remaining discrimination and retaliation claims. NMSU and Robinson discuss the evaluation and reprimand allegations in their Memorandum in support of their Motion for Summary Judgment. (*See* Doc. 450 ¶¶ 4-5, at 2, 7-9). Rao, however, does not discuss the evaluation or reprimand in her Response. Nor does she cite to any portions of the record to show that the evaluation was unfair or retaliatory, or that the reprimand was improper. Furthermore, Rao did not reference the evaluation or the reprimand in her Response where she listed the conduct she complains of:

> The conduct Rao complains of falls into five categories: (1) her Department Head fabricated the qualifications necessary for promotion and indicated to Rao that he would not support her candidacy unless she met the fabricated standard, thus dissuading her from applying for promotion; (2) her removal from and the refusal to appoint her to various committees at the Departmental and College levels at NMSU; (3) the refusal to appoint her to administrative positions such as advisor, coordinator or liaison, for which she was qualified; (4) the denial of opportunities to teach

11

> additional classes and thereby obtain additional compensation; (5) the failure to pay Rao all of the compensation due her and which she had been promised for a period of over a month.

(Response at 10). Consequently, Rao has not made a prima facie showing that the allegedly unfair/retaliatory evaluation and improper reprimand constitute adverse actions. *See* Fed. R. Civ. P. 56(c)(1) (A party must support its factual position on a motion for summary judgment by citing to particular parts of materials in the record).

**Summer Pay**

> Rao alleges that "she was paid less than specified in her contract." (Stipulation at 6).
>
> Rao received less than had been agreed upon for teaching during the summer 2008 session. She raised the issue with the interim Department Head and had to work closely with the Department Head and Department secretary for over a month to convince them it was incorrect. Rao was ultimately paid the correct amount, but only after expending considerable effort and waiting over a month.

(Response ¶ 14, at 5). Rao testified that after she notified the Department Head and Departmental secretary about the pay issue, she "was told that indeed the college had made a mistake in paying" her. (Response Ex. 2 at 90:23-25). "Title VII does not provide a cause of action for every human resources department error . . . Rather, Title VII requires a plaintiff to come forward with evidence from which a jury could conclude that the defendants' behavior was the result of something *more* than a mistake-namely discriminatory animus." *Orr v. City of Albuquerque*, 531 F.3d 1210 ,1217 (10th Cir. 2008) (*emphasis in original*). Rao has not cited any portions of the record which suggest that the pay issue was anything other than a mistake and, consequently, has not shown a causal connection between the pay issue and her speaking out on discrimination and retaliation at NMSU.

**Teaching Load**

Rao alleges that Robinson "denied her teaching opportunities to which she was entitled." (Stipulation at 7).

> Rao was denied the opportunity to teach "overload" courses, an opportunity which had been extended to her before she began to speak out against what she perceived to be discrimination in the Department of Health Science. Other more junior faculty members were provided the opportunity to teach "overload" courses. . . Teaching "overload" courses increases the faculty member's compensation.

(Response ¶¶ 15-16, at 5). The only portion of the record she cites in support of this allegation is her deposition testimony. Rao was asked: "Do you feel that you've lost out on an opportunity to teach what's termed 'overload classes,' as well?" (Doc. 459-5 at 345:4-6). Rao responded: "Yes. Oftentimes, I was not informed of those courses that were available to be taught as overloads, yes." (Doc. 459-5 at 345:7-9). Rao has not made a prima facie showing the alleged denial of opportunity to teach overload courses was an adverse employment action, because she has not cited to any portions of the record to show that she expressed interest in teaching, or requested to teach, overload classes and was denied by NMSU and/or Robinson.[3]

With regard to her retaliation claim, Rao suggests that she was denied the opportunity to teach overload classes after "she began to speak out against what she perceived to be discrimination in the Department of Health Science." (Response ¶ 15, at 5). Although Rao mentions some occasions where she spoke out about her concerns regarding discrimination, she does not provide the dates on which she was "denied" overload teaching opportunities. Accordingly, the Court

---

[3]NMSU and Robinson suggest that Rao did not have time to teach overload classes noting that "Rao testified that due to the burden of her existing teaching load, she had no time to apply for a major grant:" "It requires a lot of time and smaller teaching loads to [apply for large grants from federal agencies]. I could have done it, it's not for a lack of research abilities, but I just didn't have the time because of the teaching loads that we, in the faculty members, carried." (Memorandum at ¶ 16, at 4; Ex. A-1 at 132:1-16).

cannot determine that Rao made a prima facie showing of a causal connection of the adverse action to her protected activity based solely on close temporal proximity. *See Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013) (Where the very close temporal proximity between the protected activity and the retaliatory conduct is lacking, the plaintiff must off additional evidence to establish causation). Rao has not offered any additional evidence regarding the "denial" of overload teaching opportunities to establish causation.

Even if Rao had made a prima facie showing of an adverse employment action, NMSU and Robinson have proffered a legitimate non-discriminatory purpose for the adverse employment non-action. Rao does not dispute Robinson's assertion that "[p]ursuant to NMSU's Policy Manual, teaching loads are set at 12 credits per semester, and if there are any issues the faculty member may appeal the matter pursuant to university policy." (Memorandum ¶ 15, at 4 (citing Exhibit C, NMSU Policy § 5.20.20)). The Policy Manual states that in addition to teaching loads, "[t]he faculty member is expected to participate in some research or creative endeavor, professional and/or public service, and internal university activities." (Memorandum Ex. C, Doc. 450-4 at 2).

The burden then shifts back to Rao to show (1) for her discrimination claim, that her protected class status was determinative factor in the employment decision, or that the employer's explanation was merely pretext; and (2) for her retaliation claim, that the employer's asserted reasons for the adverse employment action are pretextual. Rao has not cited any portions of the record to show that her protected class status was a determinative factor in NMSU and Robinson "denying" her the opportunity to teach overload classes, or that their reasons for doing so are pretextual.

**Totality of the Circumstances**

Rao contends that "[r]ather than considering each alleged act discretely, the Court must

14

consider all of the alleged acts together to determine whether, in the aggregate, they adversely affected the terms, conditions or privileges of her employment." (Response at 9-10). Rao cites two Tenth Circuit cases to support her contention. Both cases indicate that courts should consider "the totality of the circumstances" in hostile work environment cases. *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257, 1262 (10th Cir. 1998); *Hernandez v. Valley View Hospital Assoc.*, 684 F.3d 9950, 959 (10th Cir. 2012). This case is not a hostile work environment case. Rao admits that she "has not brought a distinct claim for hostile working environment." (Response at 10). She cites no other legal authority that requires the Court to consider all the acts in the aggregate. The Court will, however, briefly do so.

After considering all of the acts together, the Court concludes that they do not together make a prima facie showing of an adverse action. First, the Court disregards the allegations of an unfair/retaliatory evaluation and improper reprimands, because Rao does not cite to any portions of the record to support those allegations. As for the summer pay issue, the only evidence Rao offers is that it was a mistake that NMSU corrected within a month or two. With regard to her allegation that Robinson denied her teaching opportunities to which she was entitled, the record shows that NMSU had a policy and procedure in place for changing a teaching load. Rao did not offer any evidence that she followed the procedure and NMSU denied her requests. She only states that she was not informed that the overload classes were available. Rao's application letter (Doc. 459-2) shows that she served on many committees including five committees in 2009. She cites no evidence regarding how many committees she is entitled to, or is effectively able to, serve on. Of the five committees from which she was allegedly excluded, Rao offers no evidence that she applied to serve on those committees. That leaves the derogatory comments, including the anonymous note. Rao cites five instances of derogatory comments over approximately a year. *See Herrera v. Lufkin*

15

*Industries, Inc.*, 474 F.3d 675, 680 (10th Cir. 2007). ("A plaintiff does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs.  Instead, there must be a steady barrage of opprobrious racial comments."). Having considered all of the alleged acts together, the Court concludes that Rao has not shown that those acts, in the aggregate have adversely affected the terms, conditions or privileges of her employment.

**IT IS ORDERED** that Defendants New Mexico State University and Dr. James Robinson's Motion for Summary Judgment on Dr. Satya Rao's Claims Under 42 U.S.C. §§ 1981 and 1983, Title VII and the New Mexico Human Rights Act (Doc. 449) is GRANTED.

_____
**UNITED STATES DISTRICT JUDGE**