IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YELENA BIRD, FREEDOM CHETENI,
JOHN MORAROS and SATYA RAO,

               Plaintiffs,

vs.                                                        No. CIV 08-851 WJ/RHS

REGENTS OF NEW MEXICO STATE UNIVERSITY,
LARRY OLSEN, in his individual capacity,
JAMES ROBINSON, in his individual capacity,
MICHAEL MARTIN, in his individual capacity,
ROBERT GALLAGHER, in his individual capacity, and
MICHAEL ZIMMERMAN, in his individual capacity,

               Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS BIRD AND MORAROS' CLAIMS OF RETALIATION AS A RESULT OF A MEMORANDUM BEING SUBMITTED WITH ALLEGEDLY FALSE ALLEGATIONS AGAINST PLAINTIFFS AND ALLEGED THREATS TO REVOKE DEGREES**

**THIS MATTER** comes before the Court on Defendants New Mexico State University, James Robinson and Larry Olsen's Motion for Summary Judgment on Plaintiffs Bird and Moraros' Claims of Retaliation as a Result of a Memorandum Being Submitted with Allegedly False Allegations Against Plaintiffs and Alleged Threats to Revoke Degrees (Doc. 503). For the reasons stated below, the Court grants the motion.

**I.**     **Legal Standard**

"To establish a prima facie case of retaliation [under Title VII and § 1981], [a plaintiff] must establish that: (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir.2001). "As with claims for discriminatory discharge, if the plaintiff establishes a prima facie

case of retaliation, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action. If the employer satisfies this burden of production, then, in order to prevail on her retaliation claim, the plaintiff must prove that the employer's articulated reason for the adverse action is pretextual, i.e. unworthy of belief." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir.2001).

The legal standards for retaliation under Title VI and the NMHRA are the same as those under Title VII and § 1981.  To establish retaliation under Title VI, "a plaintiff must show that: (1) she was engaging in a protected activity; (2) the funded entity subjected her to an adverse action after or contemporaneously with the protected activity; and (3) a causal link between the adverse action and the protected activity."  *Whitfield v. Notre Dame Middle School*, 412 Fed.Appx. 517, 522 (3d Cir. 2011).  "In order to establish a claim of retaliation under the NMHRA, a plaintiff must demonstrate that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between these two events." *Charles v. Regents of New Mexico State University*, 256 P.3d 29, 33 (N.M.App. 2010).

## II.    The Memorandum

Plaintiffs Yelena Bird and John Moraros assert that New Mexico State University ("NMSU"), "through Defendants Olsen and Robinson . . . drafted a memorandum containing false allegations regarding" Bird and Moraros.  (Doc. 443 at 2, 4-5).  On February 12, 2008, Robinson sent a memo to Dr. Waded Cruzado, Executive Vice-Provost/Provost regarding the notice of non-renewal for Drs. Bird and Moraros.  (Doc. 401-6).  Robinson's memo stated that Bird and Moraros "have exhibited unprofessional, unethical, and uncooperative behaviors since their appointments to tenure track positions in this department" and described several instances of their behavior.

Defendants contend that summary judgment is appropriate with regard to Plaintiffs' claim about the allegedly false memorandum because the Court has previously ruled that the allegations in Robinson's memorandum were not false or pretextual. The Court carefully considered the statements in Robinson's memorandum and other evidence in the record. (Doc. 426 at 3-7). In concluding that Robinson's statements were not false or pretextual, the Court stated:

> Plaintiffs argue that "blatant falsification of evidence by Robinson to justify the terminations . . . serves as evidence of pretext." (*See* Response at 19). Plaintiffs contend that Robinson provided false information about Bird and Moraros to Provost Cruzado by advising Cruzado that: (1) Bird and Moraros were known to unethically add names of graduate students and faculty members to scholarly articles to which they did not contribute; (2) Moraros had improperly withheld approval of funds associated with his grant projects; and (3) Moraros was a poor teacher. (*See id.*). The Court disagrees. As discussed above, Plaintiffs misconstrue the record regarding these three issues. Two persons, Brandon and Young, informed Robinson that Plaintiffs had added Brandon's name to an article to which he had not contributed and informed Young that they would add his name to every manuscript they do. Robinson testified that although he was not directly involved with the grant fund disbursements, a vendor had asked about it and another person provided Robinson information which indicated there was an unnecessary delay in the disbursement. (*See* Response Ex. 2 at 86:1-88:11). Plaintiffs argue that "Moraros may have been justified in withholding the monies," and that Robinson "had not actually investigated this matter prior to using it as a justification for termination," but do not dispute Robinson's statements that monies were withheld and administration had to get involved. (Response at 16). Robinson did not accuse Moraros of poor teaching but instead informed Cruzado that there were "numerous student complaints" about one course Moraros taught. Plaintiffs did not dispute Robinson's assertion that there were student complaints.

(Doc. 426 at 13-14) (Black, J.).

Bird and Moraros contend that there are genuine issues as to whether the statements in Robinson's memorandum are false. (Doc. 505 at 7-10). Bird and Moraros assert that portions of the Court's previous ruling are erroneous and that the Court should reconsider the evidence and deny the motion for summary judgment.

"Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Doe*, 204 F.3d 1005, 1012 (10th Cir. 2000). "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1992). Bird and Moraros do not cite to new evidence that was previously unavailable, but instead refer to evidence that was before the Court when it made its previous ruling. The Court has reviewed its previous ruling along with Bird and Moraros' current argument and concludes that the previous ruling was not clearly erroneous. Consequently, the Court grants summary judgment in favor of Defendants with regard Bird and Moraros' retaliation claims based on Robinson's memorandum.

### III. Threats to Revoke Degrees

Bird and Moraros also assert that "NMSU personnel . . . threatened to revoke [their] Ph.D. degree[s] granted by NMSU because NMSU claimed [Bird and Moraros] had falsely represented to NMSU when [they] matriculated that [they] possessed a M.D. degree from a university in Mexico." (Doc. 443 at 2, 4-5).

Defendants assert that Bird and Moraros' claims of threats to revoke their degrees fail as a matter of law because unrealized threats do not constitute adverse employment actions. (Doc. 503 at 8). Bird and Moraros do not dispute Defendants' material facts that (1) Bird and Moraros' degrees were not revoked by NMSU, and (2) NMSU's Policy Manual contained the proper procedures for determining whether a degree should be revoked. Defendants attach an excerpt from the NMSU Policy Manual regarding "Degree Revocation" which states that "The Board of Regents recognizes that on rare occasions a degree may be awarded to an individual who, upon

4

review, has not properly completed all requirements for the degree." (Doc. 503-1). The Policy Manual sets forth a 26-step procedure for degree revocation, which includes, among other things, a preliminary investigation, a misconduct review panel, notification of a formal charge, a hearing before an ad hoc committee composed of five senior faculty members, an opportunity for the accused to examine any evidence and interview witnesses, representation by legal counsel, recordation by a certified court reporter, presentation of the committee's findings to the dean, forwarding the dean's decision and recommendations to the executive vice president and provost, and forwarding the recommendation of the executive vice president and provost to the president of the university who will make a decision regarding the imposition of any sanction. Persons with a conflict of interest or who are alleged to have a bias against the accused may not serve on the misconduct review panel or the ad hoc committee. The decision of the president may be appealed to the Board of Regents which, after hearing oral arguments, may, by majority vote affirm the action of the president, modify such action, or dismiss the allegations of the accused.

      Bird and Moraros contend that unrealized threats such as those to revoke the degrees of Bird and Moraros are sufficient to support a retaliation claim. (Doc. 505 at 12-15). Bird and Moraros state that the "legal standard applicable to this issue was enunciated in *Burlington Northern & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 68 . . . (2006), in which the Supreme Court held that an action was materially adverse, and therefore actionable under the retaliation provisions of Title VII, if it might well dissuade a reasonable employee from making or supporting a charge of discrimination."

      The Court finds that the alleged threats by Olsen and Robinson to revoke their degrees, while offensive, do not constitute adverse actions because they would not dissuade a reasonable

employee from making a charge of discrimination. The NMSU Policy Manual sets forth a detailed, fact-finding procedure for determining whether a degree should be revoked and excludes from that procedure persons who are alleged to have a bias against the accused. Given NMSU's extensive procedure for determining whether to revoke a degree and the fact that Olsen and Robinson would be excluded from any decision-making in that procedure, Olsen and Robinson's alleged threats are meaningless and would not deter a reasonable employee from making charges of discrimination.

Bird and Moraros also assert retaliation claims pursuant to the New Mexico Human Rights Act ("NMHRA") and contend that the NMHRA specifically recognizes that unfulfilled threats may form the basis of a retaliation claim by stating that it is an unlawful discriminatory act for any person or employer to "engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice." (Doc. 505 at 15). Having dismissed all the federal claims in this case, the Court declines to exercise supplemental jurisdiction of Bird and Moraros' retaliation claims pursuant to the New Mexico Human Rights Act. *See Smith v. City of Enid by and through Enid City Comm'n,* 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

**SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**